FILED

2015 Sep-15  PM 04:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT B

Date: July 27, 2015

Judge L. Scott Coogler
Federal Building and United States Courthouse
2005 University Boulevard
Tuscaloosa Alabama 35401

Subject: Sentencing of Norbert Vergez

Dear Sir:

Your honor, the defense has done an exemplary job portraying Col. Norbert Vergez as a decorated war veteran and acquisition professional with over 25 years of loyal active duty service who just made a little mistake. This could not be further from the truth. Vergez betrayed not just himself but the U.S. Army and the entire U.S. Government acquisition process. He has disgraced his uniform and particularly Non Standard Rotary Wing Aircraft (NSRWA) that he headed and thus corrupted. He had oversight of over $2 Billion of the US taxpayers' dollars, dollars that he mismanaged and spent as he chose with little if any oversight. This lack of oversight presented him with the opportunity to use the funds and his position in a way that benefited him and his business associates through the awards of hundreds of millions of contracts with the taxpayers' money. He not only gave these associates preferential treatment on contracts but he also gave them inside U.S. Army documents concerning the competition along with pre-release information on pending U.S. Army requirements. Thus he completely corrupted the acquisition process of those programs over which he was in charge.

On April 20, 2015 Vergez stated under oath in your court that the details in his Plea Agreement were true. In Count Two-Felony Conflict of Interest in Q. it states the following:

> "In or around March 2012, Vergez commenced negotiation for possible future employment with Person 2 (Lynn Tilton), directly and through Person 2's representatives (collectively "Person 2"). In April of 2012, Person 2 made an offer of employment to Vergez to work at Company B (MD Helicopters). In May of 2012, Vergez was told by the Army that he could not receive compensation from Company B for a year. Negotiations continued throughout the summer of 2012 as to the prospect that Vergez would work instead for Company A (Patriarch Partners) for a year, after which time he would work directly for Company B. In September 2012, Vergez signed an offer of employment at Company A substantially the same terms as proposed in April of 2012, to commence upon his retirement from the United States Army in 2013. Vergez in fact, began employment at Company A in or about March of 2013. Vergez commenced directly working at Company B in or about November of 2013."

Your honor, the above statement is completely misleading and false. Here are the facts that I know:

I was hired by MD Helicopters (Company A) in late January 2012. Immediately upon my starting to work at MDHI I learned that my recently hired direct supervisor, Ben Weiser (Executive VP of Sales and Marketing) had been brought into MDHI upon the recommendation of Col. Vergez. Then at Heli-Expo in Dallas Texas on Sunday February

12, 2012 I met Vergez at the MDHI booth. I was directed to talk with him by a Department of the Army Civilian who was also in the MDHI booth. After a very brief discussion with Vergez I was almost immediately called into the office of Patriarch Partners/MD Helicopters CEO, Lynn Tilton. During the "meeting" with Ms. Tilton, a meeting where I had her repeatedly jab her long fingernails into my chest, she informed me that Vergez was "my contact with the Army, you are not to talk with my contact with the Army" etc. On exiting her office (many in the booth had heard Tilton's tirade) Patriarch VP Randy Jones pulled me aside and explained, "don't you know, he is going to be working at MD?" I then met active duty U.S. Army CW5 Andy Pillado (Pillado dressed in a suit and was telling everyone that he would soon be joining MDHI). I was told that he was a friend of Vergez along with Ben Weiser and that he was being brought into MDHI to be part of Vergez' team. When we returned to Mesa Arizona Pillado came to the factory and spent time there. He did not know what he was going to be doing but he did know that he was going to be working there. It was common knowledge at MDHI that Vergez was going to be joining the MDHI team and that Ben Weiser and Andy Pillado were his "lead team."

During the month of February the fact that Vergez was coming to MDHI was confirmed to me by the following MDHI employees:
Matt Swisher, Director of Military Programs.
Debbie Jones, Marketing assistant.
Ben Weiser, Executive VP of Sales and Marketing.

The following Patriarch Partners employees did the same:
R. Randal Jones (Randy), VP.
Scott Whalen, VP and lives with Tilton's daughter.

It was common knowledge that Tilton and Vergez had entered into discussions about him joining the MDHI team in 2011 and that by early March of 2012 it was a sure thing. Vergez had started building his team and was ready to move forward. During a visit to MDHI on March 13 and 14, 2012 (see attachment 1, sign-in log) Vergez brought a group of Russians to meet with Tilton (this while he was still on active duty). During dinner with the group Tilton playfully reminded Vergez "remember you are talking to your future boss here." During that same trip Verez' wife had accompanied him so that they could go house hunting. This was not the initiation of employment discussions as Vergez has sworn to but the finalization of said discussions. Shortly there after construction was started on the Vergez new home in Mesa Arizona. This is in direct contradiction to Vergez' Plea page 5, paragraph Q. Please see the affidavit of Timothy Walsh (attachment 2) with chronology of the business courtship between Tilton and Vergez.

On page 5 paragraph Q, it continues: "Vergez in fact, began employment at Company A (Patriarch Partners) in or about March of 2013. Vergez commenced directly working at Company B (MD Helicopters) in or about November of 2013." This is completely false. See January 2, 2013 Org Chart (attachment 3). Vergez started working at MD Helicopters (MDHI) the week of February 4, 2013. On Friday February 8, 2013 Vergez was in MDHI's Mesa office working on behalf of the same. He was making calls to contacts of his in an attempt to promote MDHI's business. One of those calls was to the Mil Group Commander at the U.S. Embassy in Quito Ecuador. Initially Matt Swisher was told to

vacate his office so that Vergez could move into it. Vergez did not move into that office but instead started to use the office of the CEO. Later he was moved to a cubicle office across from the office of the MDHI Chief Counsel (see attachment 4. This photo was taken in mid 2013). From February 2013 until his resignation in March of 2014 Vergez' place of employment was at MD Helicopters in Mesa Arizona. He may have been on the "Patriarch" payroll but he had an office at MDHI, worked at MDHI, reviewed MDHI pricing, and promoted MDHI's interests. Please see attached screen shot (attachment 5) of Vergez' MDHI contact information that was taken in early 2013.

Vergez and his attorneys would have this court believe that his crimes were victimless, this is far from the case. There are two distinct sets of victims in this case, that is the U.S. Taxpayers, the U.S. Government, the Department of Defense, and the U.S. Army on one side and those who witnessed and spoke out about these illegal activities on the other. A short list of just a few of those (those pertaining to MD Helicopters) is as follows:

Karen Paul (Ex MDHI Chief Counsel) Had opposed the hiring of Col. Vergez prior to her firing in June of 2012.

Andrew Cairns (Ex MDHI Director of Sales. Marine Aviator and Vietnam Vet). Had opposed Vergez' involvement in MDHI dealings with U.S. Military and his setting up Pavel Borisov (Avia Baltika mentioned in Count One and Count Three) as MDHI representative for Russia.

Matt Swisher (Ex. MDHI Director of Military Programs, AZ NG Major, Aviator and West Point grad). Swisher was forced out by Vergez. He had spoken out as early as the summer of 2012 concerning the illegality of Vergez working for MDHI.

Philip Marsteller (Ex MDHI Director of Sales, US Army CWO and Aviator). I was fired on August 23, 2013, the same day that MDHI was served with a DOJ Preservation Order regarding the investigation into MDHI/Patriarch Partners/Lynn Tilton/Norbert Vergez. I had spoken out about the illegality of the relationship between Tilton/Vergez/MDHI since June of 2012. After repeated discussions about these issues with upper level management it became apparent the MDHI/Patriarch management team had no intention of correcting these issues. I then took this information to Federal authorities in September of 2012. From then on, a group of us at MDHI stated to help the DCIS in their investigation of this case. A copy of an audio that I recorded with Ruppert (one of many that I recorded with MDHI management concerning the illegal activities at MDHI/Patriarch) discussing the illegality of the Vergez/MDHI/Tilton relationship is in the custody of the DCIS/FBI/DOJ.

Mike Kelley (Ex MDHI CFO, Resigned in August of 2013). Had spoken out about the illegal payment of $30,000 to Vergez and the questionable payments to Biotech set up by Vergez.

John Celigoy (Ex MDHI Director of Military Programs, Retired Marine LTC and Aviator). Spoke out (Fall of 2012) about the illegality of hiring Vergez and

Vergez/Biotech (2013) to MDHI President Carl Schopfer. Resigned from MDHI.

David Ruppert (Ex MDHI Chief Counsel, Marine officer and Naval Academy grad). Please see David F. Ruppert v MD Helicopters Filed in the Superior Court of the State of Arizona. CV2014-015116.

Perry Orr (Ex MDHI Director of Sales, Retired US Army LTC, Aviator and West Point grad). Spoke out (Fall 2012) about the hiring of Vergez and his involvement in MDHI business. Fired March 24, 2014.

Suzanne Coleman (Ex MDHI Compliance officer). Spoke out about Vergez setting up Pavel Borisov as MDHI representative for Russia. Resigned Spring of 2013.

Cherie Erickson (Ex MDHI Compliance officer). Spoke out about Vergez/Borisov and deals Vergez was setting up in Russia and potential related ITAR violations. Instrumental in providing evidence for the criminal case. Fired August of 2014. Sued in retaliation by Tilton. MD Helicopters, Inc., v Kathy Rupp filed in Maricopa County Superior Court. CV2015-006716.

Kathy Rupp (Executive Assistant with 30 plus years at MDHI). Fired April 20, 2015 after MDHI became aware of documents that she had provided to help in the criminal and civil cases involving MDHI/Patriarch/Tilton/Vergez. Sued in retaliation by Tilton. MD Helicopters, Inc., v Kathy Rupp filed in Maricopa County Superior Court. CV2015-006716.

In closing, Vergez has chosen to "take the fall" for his accomplices, those who benefited from his criminal activity. He is pleading to a mere three counts where there is concrete evidence for many more. He is not loosing or even having his retirement reduced. I ask that a message be sent to those in DOD Acquisitions. One that states loud and clear that corruption will not be tolerated. The American Taxpayer also needs to see that the judicial system is going to help insure that their dollars are not squandered. Lastly a signal needs to be sent that the sacrifices of those who are willing to stand up against this corruption have not been in vain, not just for this case but also for those that are to come.

Sincerely,

Philip A. Marsteller

Note: I believe that it is important to note that (to the best of my knowledge) none of us who were witnesses in this case been interviewed by the Probation Office in regards to Vergez' presentence report.

Date: July 29, 2015

Judge L. Scott Coogler
Federal Building and United States Courthouse
2005 University Boulevard
Tuscaloosa Alabama 35401

Subject: Norbert Vergez Presentencing Report

Dear Sir:

In an effort to insure that I was following the proper procedures in submitting information on this case I went to www.alpn.courts.gov. I then followed links to two areas to understand the process:

> 1. "About Presentence Investigations." There it reads in part "During the presentence investigation, a probation officer will interview other persons who can provide pertinent information, including the prosecutor, law enforcement agents, *victims*, …"

> 2. Under "Explanation of Presentence Report" it states the following:

>> Part A: The Offense
>> The Offense Conduct "…This section may also include information indicating whether the offense of conviction was part of a *larger scheme or plan that included other criminal conduct which may be relevant* to the determination of the appropriate guideline, the selection of a sentence within the guideline range, and the decision to depart from the guidelines. It further describes the role of the defendant and the conduct of codefendants and other participants during the offense, including planning, preparation for the offense, and the circumstances leading to the arrest or summons of the defendant. The objective of this section is to report what happened as established by the probation officer's investigation, using the officer's best judgment to resolve factual discrepancies among sources.

>> Victim Impact "While the Victim Impact section is actually part of the offense conduct for which the defendant is responsible, *this information is presented under a separate heading to emphasize its importance* and the fact that this section *includes the impact on all victims of the offense*, regardless of whether the information affects guideline application. *An assessment of the financial, social, psychological, and medical impact upon any individual victim of the offense is presented, and any financial losses caused by the conduct in the offense are reported.*

After reading the above I decided to contact the U.S. Probation Office for the Northern District of Alabama. When I called and explained what I was attempting to do (that is provide witness/victim information for a Presentencing Report) I was treated very cordially. I was soon told that I would need to speak to the Civil AUSA. I explained that I was calling about the Criminal case. I was then told that I needed to speak with AUSA Henry Cornelius. I was also informed that they could not let me talk with the Probation Officer and that everything had to go through the U.S. Attorneys Office. Late this afternoon, I learned that the Presentencing Report

has already been finalized with apparently no interviews with the witnesses or victims in this case. As per my letter dated July 27, 2015, this is not a victimless case. The day I was fired, August 23, 2013 (for speaking out about the fraudulent and criminal activities regarding Vergez) MD Helicopters received a letter from the DOJ detailing the investigation into MD Helicopters, Patriarch Partners, Lynn Tilton and Norbert Vergez. As I was walked out of the facilities by MDHI President Carl Schopfer and Chief Counsel David Ruppert, Vergez was part of a group of MD Helicopters management that laughed as I was escorted out.

You honor, I was a victim in this case as were the following:

        Karen Paul - Ex MDHI Chief Counsel.

        Andrew Cairns - Ex MDHI Director of Sales, Marine Aviator and Vietnam Vet.

        Matt Swisher - Ex. MDHI Director of Military Programs, AZ NG Major, Aviator and West Point grad.

        Mike Kelley - Ex MDHI CFO.

        John Celigoy - Ex MDHI Director of Military Programs, Retired Marine LTC and Aviator.

        David Ruppert- Ex MDHI Chief Counsel, Marine officer and Naval Academy grad.

        Perry Orr - Ex MDHI Director of Sales, Retired US Army LTC, Aviator and West Point grad.

        Suzanne Coleman - Ex MDHI Compliance officer.

        Cherie Erickson - Ex MDHI Compliance officer.

        Kathy Rupp - Executive Assistant with 30 plus years at MDHI.

On the web site of the US Attorneys office for the Northern District of Alabama (http://www.justice.gov/usao-ndal/victim-witness-assistance-program) it states:

The Victim-Witness Assistance Program

The Federal Victim-Witness Assistance Program's goal is to ensure that victims of federal crimes are treated with fairness and respect for the victims' dignity and privacy. This program carries out the mandates of the Federal Victim and Witness Protection Act of 1982, the Crime Control Act of 1990, the Violent Crime Control and Law Enforcement Act of 1994, the Justice for All Act of 2004, and the 2011 Attorney General's Guidelines. These victim-witness assistance and protection laws and guidelines apply to all victims and witnesses of federal crimes who have suffered physical, financial, or emotional trauma. In compliance with these mandates, we provide a variety of notification and assistance services to victims of and witnesses to federal crimes.

As per the above we are victims because we were retaliated against (and for some of us the retaliation is ongoing) by Vergez and his CO-ACTOR Lynn Tilton, and the management team of her company MD Helicopters. As witnesses we provided information that lead to the criminal investigation into Vergez, co-actor Tilton and which in the end lead to this Plea Agreement. The CO-ACTOR courted and eventually did the hiring (see Tim Walsh affidavit) that lead to COUNT TWO-FFELONY CONFLICT OF INTEREST as per the Plea Agreement. THE CO-ACTOR also authorized and instructed that the $30,000 payment to Vergez listed under U. OF COUNT THREE-FALSE STATEMENTS ON VERGEZ'S GOVERNMENT ETHICS FORM be made. Tilton continues to aggressively retaliate against Cherie Erickson, Kathy Rupp and myself. As per the case filed against Rupp and Erickson Tilton also intends to retaliate against and is attempting to retaliate against additional "John Does 1-10 and Jane Does 1-10". We have been retaliated against not just by the retaliatory firing and the loss of our incomes but also by the aggressive suits filed against us by Tilton and MD Helicopters. We have suffered and

continue to suffer Financial and Emotional Trauma as outlined in the preceding paragraph.

Vergez and his attorneys would like you to believe that this was a victimless crime. They are wrong. We, the victims deserve to be heard, we deserve justice. As stated in my previous letter there are two sets of victims, the U.S. Taxpayer/Government and the Witnesses turned Victims. The U.S. Taxpayer has a voice through the U.S. Government but we the Witnesses/Victims have not had our voices heard.

Your honor, please allow us to be heard. We risked our livelihoods to bring this corruption to light. Many of us are prior U.S. Military Officers and as such know and live the Officers Code Of Conduct as Vergez was required to do. We followed the Code when we stood up against this corruption. Past Chairman, Joint Chiefs of Staff (and Army Aviator) General John W. Vessey Jr. wrote: *"There is no room for a lack of integrity or for those who place self before duty or self before comrades, or self before country."* What has happened with us should be considered when Norbert Vergez, a fellow officer who did extreme discredit to his uniform is sentenced. We ask that you hold Vergez to the high standards that he swore to uphold. We ask that you send a strong signal to present and future U.S. Government Acquisition professionals that conduct such as Vergez' will not be tolerated.

Sincerely,

Philip A. Marsteller

Note: a copy of this letter along with a **copy** of my letter of July 27, 2015 (with it's attachments) is being sent to the following:

Ramona C. Albin and/or Henry Cornelius
Assistant United States Attorney
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, AL 3520

Mark Dubester
Trial Attorney
Special Inspector General for Afghanistan Reconstruction
2530 Crystal Drive
Arlington, VA 22202

Mary Bennett
U.S. Probation and Pretrial Services
Robert S. Vance Federal Building and Courthouse
1800 5th Avenue North, 2nd Floor
Birmingham, Alabama 35203

Lee Stein, Esq.
MITCHELL | STEIN | CAREY, PC
One Renaissance Square
2 North Central Avenue, Suite 1900
Phoenix, AZ 85004

William Athanas
Waller, Lansden, Dortch & Davis
1901 6th Ave. North, Ste. 1400
Birmingham, AL 35203

May 12, 2015

To whom it may concern,

I have been asked to document my recollections regarding the interaction between Ms. Lynn Tilton with Patriarch Partners, LLC/MD Helicopters, Inc. and Colonel Norbert Vergez U.S. Army Retired. The following statement and timeline are as accurate as I am able to recall. I have no specific knowledge of her business dealings or specific conversations between herself and the Colonel. I can only attest to specific dates that they had meetings and to comments she made either directly to me or in my presence.

By the time I first met Col. Vergez in August of 2011 I had been in the employ of Ms. Tilton for over four and a half years. I and Mr. Kevin Moddes had flown her airplane, her helicopter and we had provided many more personal service duties for her exclusively for the entire time of employment and we had a very clear understanding of how she functioned on a personal and a business level. The personal services we provided ranged from ground transportation to executive support to executive protection. When we traveled with her extensively we were in close contact much of the time. Ms. Tilton made no effort to keep private her thoughts and business dealings in our presence.

After my first meeting with the Colonel, Ms. Tilton began mentioning in passing conversations how much help the Colonel has been and that it would be very advantageous to have someone like him on the team at MD. She felt that the kind of contacts he had would be very valuable for MD's business.

After the meeting August 29, 2011, Ms. Tilton commented on several occasions that she knew that the Colonel was going to retire and that she was going to try to hire him to work with MD. She felt that with his help she would be able to improve military sales both to our government and to other countries.

By October of 2011 it was clear to me from statements Ms. Tilton had made that she was in the process of making Col. Vergez an offer of employment to begin after he retired. It was apparent enough that I took the opportunity to speak with his wife about working for Ms. Tilton when I met her on a flight in November of 2011. Having worked for Ms. Tilton for so long and knowing how she treats her employees I felt it was important that the Vergez's a heads up on how challenging it can be. I did not know the Colonel or his wife very well but I felt it only fair that they understand the conditions that he would be working under and that they could talk freely to me about it. I took the opportunity in the Melbourne FL. FBO while waiting for the Colonel and Ms. Tilton to return from a meeting to speak with her. After mentioning how challenging it is to work for Ms. Tilton Ms. Vergez responded that there were several offers that they were considering. I felt that I had opened the door and that was as far as I could openly go. After we departed and were in Boca Raton the conversations that I had with Ms. Tilton led me to believe that there was an offer on the table. It was only a feeling, but with the background I had with Ms. Tilton I was certain that I was correct.

For the most part my suspicions were confirmed in my mind after the March 10 to 14, 2012 trip to Scottsdale/Mesa. The fact that Ms. Tilton was hosting the Vergez's in the Phoenix area and the conversation with Ms. Vergez when driving her to MD convinced me that there was an offer being made. Additionally, on the trip back to Toms River Ms. Tilton said that she was sure Col. Vergez was going to be joining MD when he retired. She was very enthusiastic.
The only other significant event that comes to mind was meeting with Andy Pillado at the Ft. Lauderdale International Airport. Mr. Pillado was a friend of Col. Vergez and Ms. Tilton told me that she was going to hire him as a favor to the Colonel. I do not recall the date but I believe it was after October of 2011.
This timeline is supported by copies of the flight logs for the airplane. We were instructed by Ms. Tilton to never write down the names of the passengers, but the airplane did not fly without Ms. Tilton on board except for Maintenance flights.

August 30, 2010 – KMJX to KHSV to KEKY to KMJX

This is the first time we Ms. Tilton to Huntsville, AL. She mentioned only that she was meeting with a representative from the Army regarding the MD helicopters. She said she felt it would be a productive meeting.

June 28, 2011 – KMJX to KHSV to KSDL to KMJX

This is the second time we took Ms. Tilton to Huntsville, AL. Again she mentioned only that she was meeting with a representative from the Army regarding the MD helicopters.

August 3, 2011 – KMJX to KHSV to KEKY to KMJX

This is the third time we took Ms. Tilton to Huntsville, AL. This was the first time Ms. Tilton mentioned Col. Vergez name. I do not recall if we provided the transportation to the meeting, but Col. Vergez provided transportation from the meeting back to the airport and this is the first time I meet Col. Vergez. After he dropped her at the airport she told me that she was very enthusiastic about his assistance with securing contracts for MD Helicopters and felt he would be able to assist with future contracts.

August 29, 2011 – KMJX to KBCT to KHSV to KPDK to KMJX

This is the fourth trip Ms. Tilton took to Huntsville, AL. Col. Vergez provided the transportation to and from the meeting. When he dropped Ms. Tilton off at the airport he escorted Ms. Tilton to the aircraft and they had a brief meeting in the cabin and then he departed. Ms. Tilton stated that Col. Vergez was a very valuable contact and she said he was really helping with the MD contracts.

October 6/7, 2011 – KMJX to KHSV to KIAD to KLWB to KMJX

This is the fifth trip Ms. Tilton took to Huntsville, AL. Col. Vergez provided the transportation to and from the meeting. When he dropped Ms. Tilton off at the airport he escorted Ms. Tilton to the aircraft and they had a brief meeting in the cabin and then he departed. In conversation with Col. Vergez and Ms. Tilton, Ms. Tilton stated that Col. Vergez was going to Washington DC. And that she would be meeting with additional Army personnel. I asked if Col. Vergez would be traveling with us and he said no, that he would be meeting us there. Ms. Tilton was a very excited about the meeting said that this was a very big deal for MD. She also stated that the Col. Was retiring soon and that she was going to hire him to work for MD. Ms. Tilton felt that he would help turn the business around because of his national and international contacts.

By this time it was very obvious to me that she was working very hard to bring him on board with MD as soon as possible.

November 4, 2011 – KMJX to KMCO to KMLB to KBCT to KMJX

MS. Tilton asked us to stop in Orlando on our way to Boca Raton. She advised us that she was meeting Col Vergez in Orlando. Upon arrival we were informed that we would be taking Col. Vergez and his wife from Orlando to Melbourne, FL. Ms. Tilton told us that she and Col. Vergez would be meeting with some Army officers in Melbourne and that Col. Vergez and his wife would be remaining in Melbourne. While waiting at the FBO in Melbourne I engaged in conversation with Ms. Vergez. I knew that Ms. Tilton had intentions of offering Col. Vergez a position and I wanted to let Ms. Vergez know that Ms. Tilton was very challenging and difficult individual to work for and that he should be very careful. Her response was that he has several options that he was considering. Her response was not really evasive, but it was sufficiently subdued that I felt that he was definitely considering an offer from Ms. Tilton and that the Vergez's did not want me to know that the offer was on the table and that they were considering it. This was just the feeling that I had.

February 8, 2012 – KMJX to KHSV to KMJX

MS. Tilton had a meeting with Col. Vergez. We dropped her off at his office and the meeting extended to the evening. Col. Vergez dropped Ms. Tilton off at the airport and escorted her to the airplane. They had continued conversation in the airplane and then he departed and we returned to Toms River. Before take-off Ms. Tilton was very animated and told me that Col. Vergez would be joining the MD team after he retired. She did not give me a detailed timeline on when that would be other than he was due to retire at the end of the year.

March 10-14, 2012 – KMJX to KHSV to KSDL to KMJX

MS. Tilton had a meeting with Col. Vergez. We dropped her off and we picked her up. We then headed to Scottsdale for several days. While in route Ms. Tilton told us that Col. Vergez was headed to Mesa to meet with the MD team and that Ms. Vergez was coming with him to look at properties. While in Scottsdale that weekend, we were asked to pick Ms. Vergez up at her hotel and bring her to the MD plant in Mesa, AZ. to meet up with her husband. While on the way we engaged in conversation again. She said that they had looked at several properties that they liked. Hearing that I asked if Col. Vergez was coming on board with MD and all Ms. Vergez would say was we will see.

This statement is accurate to the best of my memory and supported by the documented flights.

*May 13, 2015*

Timothy J. Walsh
12417 Highway 99
Everett, Washington 98204

STATE OF __Washington__ )
                                            )SS.
COUNTY OF __King__ )

I certify that I know or have satisfactory evidence that __Timothy John Walsh__ is the person who appeared before me, and said person acknowledged that said person signed this instrument to be his/her free and voluntary act for the uses and purposes mentioned in the instrument.

DATED: __5/13/2015__.

Notary Seal

Notary Public
State of Washington
JUSTIN VANCE
My Appointment Expires Oct 23, 2017

(Signature of Notary)

__Justin Vance__
(Legibly Print or Stamp Name of Notary)
Notary Public in and for the State of Washington
My appointment expires: __10/23/2017__

# EVE II, LLC — Flight Department

## FLIGHT & MAINTENANCE LOG

### OPERATIONS

MODEL: _____  Serial No.: 62000.0244  Trip Date: 8-30-10  Crew: _____  Trip Number: 444.611

PASSENGERS
_____
_____
_____
_____
_____

| DATE | FROM | TO | PAX | BLOCK OUT | BLOCK IN | TOTAL BLOCK | TOTAL FLIGHT TIME | AIRFRAME CYCLES | L ENGINE TIME | L ENGINE CYCLES | R ENGINE TIME | R ENGINE CYCLES | FUEL BURNED |
|------|------|-----|-----|-----------|----------|-------------|-------------------|-----------------|---------------|-----------------|---------------|-----------------|-------------|
| 8-30 | MSY | ISP | 2 | | | | | 2 | | | | | |
| | ISP | MSY | 3 | | | | | 1 | | | | | |
| | MSY | | 3 | | | | | 1 | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | Page Totals | | 2.6 | 3 | 3.0 | 3 | 3.8 | 3 | |
| | | | | | Previous Totals | | | | | | | | |
| | | | | | TOTAL | | | | | | | | |

### Notes
_____
_____
_____

### VOR STATUS

| Date | |
|------|--|
| Type/Location | |
| Signature | |
| VOR #1/ #2 | |

### FUEL PURCHASE LOG

| LOCATION | GALLONS | PRICE |
|----------|---------|-------|
| | | |
| | | |
| | | |

## OPERATIONS

MODEL: _N807LS_  Serial No.: _6229-0444_  Trip Date: _6-26_  Crew: _____ Trip Number: _____

PASSENGERS

| DATE | FROM | TO | PAX | BLOCK OUT | BLOCK IN | TOTAL BLOCK | TOTAL FLIGHT TIME | AIRFRAME CYCLES | L ENGINE TIME | L ENGINE CYCLES | R ENGINE TIME | R ENGINE CYCLES | FUEL BURNED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6-26 | | | | | | 2.0 | 1.8 | 3 | 1.8 | 1 | | | |
| 6-26 | | | 2 | | | 2.3 | 2.1 | 3 | 2.1 | 1 | 2.3 | 1 | |
| 7-1 | SDL | | 4 | | | 4.6 | 4.2 | | 4.2 | 2 | | | |

Notes

| Page Totals | 9.1 | | | | | | |
|---|---|---|---|---|---|---|---|
| Previous Totals | 2105.8 | | | | | | |
| TOTAL | 2114.9 | | | | | | |

### VOR STATUS

| Date | 7-1 |
|---|---|
| Type/Location | |
| Signature | |
| VOR #1 #2 | |

### FUEL PURCHASE LOG

| Date | Type/Location | LOCATION | GALLONS | PRICE |
|---|---|---|---|---|
| | | | | |
| | | | | |

# EVE II, LLC
## Flight Department

**FLIGHT & MAINTENANCE LOG**

## OPERATIONS

MODEL: _____ Serial No.: _____ Trip Date: _____ Crew: _____ Trip Number: _____

PASSENGERS _____

| DATE | FROM | TO | PAX | BLOCK OUT | BLOCK IN | TOTAL BLOCK | TOTAL FLIGHT TIME | AIRFRAME CYCLES | L ENGINE TIME | L ENGINE CYCLES | R ENGINE TIME | R ENGINE CYCLES | FUEL BURNED |
|------|------|----|----|-----------|----------|-------------|-------------------|-----------------|---------------|-----------------|---------------|-----------------|-------------|
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

**Notes** _____

| | TOTAL BLOCK | TOTAL FLIGHT TIME | AIRFRAME CYCLES | L ENGINE TIME | L ENGINE CYCLES | R ENGINE TIME | R ENGINE CYCLES | FUEL BURNED |
|--|-------------|-------------------|-----------------|---------------|-----------------|---------------|-----------------|-------------|
| Page Totals | | | | | | | | |
| Previous Totals | | | | | | | | |
| TOTAL | | | | | | | | |

### VOR STATUS

| Date | |
|------|--|
| Type/Location | |
| Signature | |
| VOR #1 / #2 | |

### FUEL PURCHASE LOG

| LOCATION | GALLONS | PRICE |
|----------|---------|-------|
| | | |
| | | |
| | | |

## OPERATIONS

MODEL: _____ Serial No.: _____ Trip Date: _____ Crew: _____ Trip Number: _____

PASSENGERS

| DATE | FROM | TO | PAX | BLOCK OUT | BLOCK IN | TOTAL BLOCK | TOTAL FLIGHT TIME | AIRFRAME CYCLES | L ENGINE TIME | L ENGINE CYCLES | R ENGINE TIME | R ENGINE CYCLES | FUEL BURNED |
|------|------|-----|-----|-----------|----------|-------------|-------------------|-----------------|---------------|-----------------|---------------|-----------------|-------------|
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

Notes _____
_____
_____
_____

| | | | | | | |
|---|---|---|---|---|---|---|
| Page Totals | | | | | | |
| Previous Totals | 2121.2 | | | 2020.4 | | 2026.2 |
| TOTAL | | | | 2020.4 | 2029 | 2026.2 |

### VOR STATUS

| | |
|---|---|
| Date | 8.3 |
| Type/Location | |
| Signature | |
| VOR #1 / #2 | |

### FUEL PURCHASE LOG

| LOCATION | GALLONS | PRICE |
|----------|---------|-------|
| | | |
| | | |
| | | |

**MODEL:** _____ **Serial No.:** _____ **Trip Date:** _____ **Crew:** _____ **Trip Number:** _____

**PASSENGERS**

| DATE | FROM | TO | PAX | BLOCK OUT | BLOCK IN | TOTAL BLOCK | TOTAL FLIGHT TIME | AIRFRAME CYCLES | L ENGINE TIME | L ENGINE CYCLES | R ENGINE TIME | R ENGINE CYCLES | FUEL BURNED |
|------|------|----|----|-----------|----------|-------------|-------------------|-----------------|---------------|-----------------|---------------|-----------------|-------------|
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| **Page Totals** |  |  |  |  |  |  |  |  |  |  |  |  |  |
| **Previous Totals** |  |  |  |  |  |  |  |  |  |  |  |  |  |
| **TOTAL** |  |  |  |  |  |  |  |  |  |  |  |  |  |

**Notes** _____

### VOR STATUS

| Date | | |
|------|--|--|
| Type/Location | | |
| Signature | | |
| VOR #1 / #2 | | |

### FUEL PURCHASE LOG

| LOCATION | GALLONS | PRICE |
|----------|---------|-------|
|  |  |  |
|  |  |  |

OPERATIONS

MODEL: _____  Serial No: _____  Trip Date: _____  Crew: _____  Trip Number: _____

PASSENGERS

| DATE | FROM | TO | PAX | BLOCK OUT | BLOCK IN | TOTAL BLOCK | TOTAL FLIGHT TIME | AIRFRAME CYCLES | L ENGINE TIME | L ENGINE CYCLES | R ENGINE TIME | R ENGINE CYCLES | FUEL BURNED |
|------|------|----|----|-----------|----------|-------------|-------------------|-----------------|---------------|-----------------|---------------|-----------------|-------------|
| | | | | | | | | | | | | | |
| | | | 1 | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

Notes

| Page Totals | | | | | |
| Previous Totals | | | | | |
| TOTAL | | | | | |

**VOR STATUS**

| Date | | |
|------|--|--|
| Type/Location | | |
| Signature | | |
| VOR #1 / #2 | | |

**FUEL PURCHASE LOG**

| LOCATION | GALLONS | PRICE |
|----------|---------|-------|
| | | |
| | | |
| | | |

# EVE II, LLC Flight Department

## FLIGHT & MAINTENANCE LOG

## OPERATIONS

MODEL: _Citation_   Serial No.: _____   Trip Date: _2.6.11_   Crew: _____   Trip Number: _____

PASSENGERS
_____
_____
_____
_____

| DATE | FROM | TO | PAX | BLOCK OUT | BLOCK IN | TOTAL BLOCK | TOTAL FLIGHT TIME | AIRFRAME CYCLES | L ENGINE TIME | L ENGINE CYCLES | R ENGINE TIME | R ENGINE CYCLES | FUEL BURNED |
|------|------|----|-----|-----------|----------|-------------|-------------------|-----------------|---------------|-----------------|---------------|-----------------|-------------|
| 2.6 | | | | | | 2.3 | 2.1 | 1 | | | | | |
| | | | | | | 1.5 | 1.5 | 1 | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

| | TOTAL BLOCK | TOTAL FLIGHT TIME | AIRFRAME CYCLES | L ENGINE TIME | L ENGINE CYCLES | R ENGINE TIME | R ENGINE CYCLES | FUEL BURNED |
|---|---|---|---|---|---|---|---|---|
| Page Totals | | | | | | | | |
| Previous Totals | | | 1130 | | | | | |
| TOTAL | | | 1132 | | | | | |

Notes
_____
_____
_____

### VOR STATUS

| Date | |
|------|---|
| Type/Location | |
| Signature | |
| VOR #1/ #2 | |

### FUEL PURCHASE LOG

| LOCATION | GALLONS | PRICE |
|----------|---------|-------|
| | | |
| | | |
| | | |
| | | |

# EVE II, LLC Flight Department

## FLIGHT & MAINTENANCE LOG

### OPERATIONS

MODEL: _N82BH_    Serial No.: _6020xxxx_    Trip Date: _3-10-12_    Crew: _David Rhodes_    Trip Number: _44.200_

**PASSENGERS**

| DATE | FROM | TO | PAX | BLOCK OUT | BLOCK IN | TOTAL BLOCK | TOTAL FLIGHT TIME | AIRFRAME CYCLES | L ENGINE TIME | L ENGINE CYCLES | R ENGINE TIME | R ENGINE CYCLES | FUEL BURNED |
|------|------|----|----|-----------|----------|-------------|-------------------|-----------------|---------------|-----------------|---------------|-----------------|-------------|
| 3/10 | HSV |  |  |  |  |  |  |  | 1.6 |  |  |  |  |
| 3/1 |  |  |  |  |  | 2.1 | 1.2 | 3 |  | 3 |  | 3 |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  | Page Totals |  |  |  |  |  |  |  |  |
|  |  |  |  |  | Previous Totals |  |  |  |  |  |  |  |  |
|  |  |  |  |  | TOTAL | 2206.1 | 1145 |  |  |  |  |  |  |

**Notes** _____

### VOR STATUS

| Date | 3.1 |
|------|-----|
| Type/Location |  |
| Signature |  |
| VOR #1/ #2 |  |

### FUEL PURCHASE LOG

| LOCATION | GALLONS | PRICE |
|----------|---------|-------|
|  |  |  |
|  |  |  |
|  |  |  |



# We the People

Of the United States,
in Order to form a more perfect Union,
establish Justice, insure domestic Tranquility,
provide for the common defence,
promote the general Welfare, and secure
the Blessings of Liberty to ourselves and
our Posterity, do ordain and establish this
Constitution for the United States of America

SIGNATURE OF BEARER / SIGNATURE DU TITULAIRE / FIRMA DEL TITULAR

**PASSPORT**
**PASSEPORT**
**PASAPORTE**
**USA**

## UNITED STATES OF AMERICA

Type / Type / Tipo   Code / Code / Código   Passport No. / No. du Passeport / No. de Pasaporte
P        USA         488612908

Surname / Nom / Apellidos
**WALSH**
Given Names / Prénoms / Nombres
**TIMOTHY JOHN**
Nationality / Nationalité / Nacionalidad
**UNITED STATES OF AMERICA**
Date of birth / Date de naissance / Fecha de nacimiento
**1949**
Place of birth / Lieu de naissance / Lugar de nacimiento     Sex / Sexe / Sexo
**MINNESOTA, U.S.A.**     **M**
Date of issue / Date de délivrance / Fecha de expedición   Authority / Autorité / Autoridad
**23 May 2013**     **United States**
Date of expiration / Date d'expiration / Fecha de caducidad   **Department of State**
**22 May 2023**
Endorsements / Mentions Spéciales / Anotaciones
**SEE PAGE 51**

**USA**

```
P<USAWALSH<<TIMOTHY<JOHN<<<<<<<<<<<<<<<<<<<<<<<
4886129088USA4908311M2305226531495404<503870
```

Via Email

Date: August 21, 2015

Judge L. Scott Coogler
Federal Building and United States Courthouse
2005 University Boulevard
Tuscaloosa Alabama 35401

Subject: DEFENDANT NORBERT VERGEZ'S SENTENCING MEMORANDUM WITH
INCORPORATION MOTION FOR DOWNWARD DEPARTURE AND
DOWNWARD VARIANCE

Dear Sir:

Your honor, this is my third letter detailing illegal activities, retaliation against witnesses and false and misleading statements by Norbert Vergez, his co-actors and his attorneys.

I ask that you review my letter sent to your court on July 27, 2015 and compare the facts relayed with those stated on pages 19-21 and 23-24 of the Defendant's Sentencing Memorandum filed yesterday with the court. I believe his description of the factual basis for the conflict of interest charge is grossly misleading by attempting to link the progress payment issue to an FMS contract with Costa Rica (This was another of many conflicts of interest that the Colonel had between his responsibilities with the U.S. Army and those of his "new" employer, Lynn Tilton. A conflict of interest that started on February 12, 2012 and continued until well into 2014). In fact, the progress payment issue noted in the Plea Agreement involves MD Helicopter's FMS contract to deliver twelve MD530F aircraft to the Saudi Arabian National Guard (SANG).

I believe that the reason that Vergez is attempting to mislead the court on this issue is because of the conflict of interest arising out of his involvement in securing progress payments for MD under the SANG contract is the basis for a qui tam allegation under the False Claims Act that I have brought against Vergez, Lynn Tilton and MD. Vergez and his lawyers would rather mislead the court than make an admission that could be damaging to Vergez, Tilton and MD's interests in the civil case (yet in doing so they admitted another of his conflicts of interest that are subject of the criminal investigation). They are not being candid with the Court.

The progress payment issue with the SANG contract arose and was approved with Vergez' involvement in June-July of 2012, as alleged in my civil qui tam case. There were not any progress payment issues with the Costa Rica contract (the payment for the first MD600 (not MD520) aircraft for Costa Rica was done in December of 2012). Without providing any specific details, the government's sentencing memorandum states, "In Count Two, the felony conflict of interest count, the factual basis in the plea agreement clearly lays out that Vergez was negotiating employment with a company while he took official acts to benefit that company." According to the plea agreement, the facts giving rise to the conflict of interest charge, i.e. the progress payment, occurred in June-July 2012. Since there are not facts suggesting that any progress payment agreement was reached between the Army and MD at that time involving the Costa Rica contract, the plea agreement can only pertain to the SANG contract, as alleged in my civil qui tam complaint.

In my July 27th letter to the court I detailed and attached an affidavit from Tilton's ex chief pilot Timothy Walsh. This affidavit detailed the extent of the relationship between Tilton and Vergez and provided proof that what Vergez had plead to was false (as to the dates of his courtship and employment). It has not been utilized in any other action and has not been produced to MDHI, Patriarch Partners, or Lynn Tilton's attorneys. This was a confidential document provided to the court with copies to the DOJ attorneys, the Probation Office and the attorneys for Vergez.

Late yesterday afternoon Stanley Lerner and John Charland (the attorneys in my wrongful termination case against MD Helicopters) received and email from Tilton/Patriarch Partners/MD Helicopters attorney Thomas Arn. The email contained a letter (attachment 1) from Arn and included a list of subpoenas that are to be served on Monday August 24th. The letter states "Please find Subpoenas to Produce Documents in this matter directed to Mr. Lance E. Stamper, the United States Army, the United States Department of Defense, Vulcan Capital, and Mr. Timothy J. Walsh." The subpoena to Vulcan Capital (attachment 2), Tim Walsh's employer requires in part "produce any drafts, copies, or iterations of the May 13, 2015 Timothy J. Wash sworn letter." The subpoena to Timothy J. Walsh (attachment 3) also requires that he "produce any drafts, copies or iterations of Your May 13, 2015 sworn letter." Sending this subpoena to the employer of a witness is harassment and retaliation, which is consistent with every thing that I have been telling the court. These documents prove and demonstrate that Vergez and Tilton are still very much in cahoots. This is another attempt to continue the harassment of witnesses.

Your honor, again Vergez shows his disdain and contempt for the law through his misleading and false statements and his participation in the ongoing harassment of witnesses. This is not the position of a penitent man but of one who believes that the ends justify the means.

In closing, I thank you for taking the time to read my letters and for considering the facts that I have brought forward. I will be in the courtroom on Tuesday the 25th. I am willing to testify to all that I have stated under oath and to answer any questions that the court should choose to ask. I ask that you allow me a witness and victim (due to the retaliation) to address the court and present these facts.

Sincerely,

Philip A. Marsteller
(214) 213-8703

cc: Mark Dubester, Ramona Albin, Henry Cornelius, Mary Bennett, Lee Stein, William Athanas, Stanly R. Lerner, John E. Charland

Enclosures

# Ogletree
# Deakins

**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**

*Attorneys at Law*

Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700
Facsimile: 602.778.3750
www.ogletreedeakins.com

Thomas D. Arn
602.778.3702
thomas.arn@ogletreedeakins.com

August 20, 2015

**Via E-Mail and U.S. Mail**

Stanley R. Lerner
Stanley R. Lerner, P.C.
3707 North 7th Street, Suite 250
Phoenix, AZ 85014
lernerpc@azbar.org

John E. Charland
The Charland Law Firm
3707 North 7th Street, Suite 250
Phoenix, AZ 85014
litigation@CharlandLawFirm.com

RE:    *Marsteller v. MD Helicopters, Inc.; CV14-01788-PHX-DLR*

Dear Counsel:

Please find enclosed Subpoenas to Produce Documents in this matter directed to Mr. Lance E. Stamper, the United States Army, the United States Department of Defense, Vulcan Capital, and Mr. Timothy J. Walsh. We intend to serve the subpoenas on Monday, August 24, 2015.

Sincerely,

Thomas D. Arn

TDA:sas

Enclosures

22144866.1

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver
Detroit Metro ▪ Greenville ▪ Houston ▪ Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico)
Miami ▪ Milwaukee ▪ Minneapolis ▪ Morristown ▪ Nashville ▪ New Orleans ▪ New York City ▪ Orange County ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh
Portland ▪ Raleigh ▪ Richmond ▪ St. Louis ▪ St. Thomas ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Stamford ▪ Tampa ▪ Torrance ▪ Tucson ▪ Washington

# UNITED STATES DISTRICT COURT
### for the
District of Arizona

| | | |
|---|---|---|
| Philip **Marsteller**, et al. | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No. CV-14-01788-PHX-DLR |
| | ) | |
| MD Helicopters, **Inc.** | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:

Vulcan Capital

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **See Exhibit A.**

| Place: Ogletree Deakins<br>800 Fifth Avenue, Suite 4100<br>Seattle, WA 98104 | Date and Time:<br><br>09/07/2015 9:00 am |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 8/20/15

_CLERK OF COURT_

OR

_____          _____
_Signature of Clerk or Deputy Clerk_              _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
MD Helicopters, Inc. _____ , who issues or requests this subpoena, are:

Thomas Arn, Esplanade Center III, 2415 E. Camelback Rd., Ste. 800, Phoenix, AZ 85016; Tel. 602-778-3702; Email:

**Notice to the person who issues or requests this subpoena** Tom.Arn@ogletreedeakins.com
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case **before** it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. CV-14-01788-PHX-DLR

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                    *Server's signature*

                                         _____
                                                    *Printed name and title*

                                         _____
                                                    *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

# EXHIBIT A

## INSTRUCTIONS FOR USE FOR SUBPOENA DUCES TECUM

1. In providing the documents described herein, you are requested to furnish all documents available to you, **regardless** of whether these documents are possessed directly by you, or by your attorney, employer, employees, agents, investigators, or other representatives.

2. If any of these documents cannot be produced in full, produce to the extent possible, and specify the reasons for your inability to produce the remainder stating whatever information, knowledge or belief you have concerning the substance of the contents of such unproduced documents.

3. If any document or thing requested was at one time in existence, but is no longer in existence, you shall so state, specifying for each document or thing: (a) the type of documents or thing, (b) the types of information contained therein, (c) the date upon which the document or thing ceased to exist, (d) the circumstances under which the document or thing ceased to exist, and (e) the identity of each person having knowledge or who had knowledge of the contents thereof.

4. To the extent that any request is objected to, you are instructed to set forth all reasons for such objection. If any objection is made only to part of a particular request, that part shall be so specified and documents responsive to all other parts of the request shall be produced. **With respect to any document which you claim to be privileged or otherwise immune from production, you are to describe each document in your response as follows: (a) the document's date, (b) its title, (c) the identity of each person who prepared or wrote the document, (d) the identity of each person who received the document, (e) the type of document (for example, memorandum, letter, etc.), (f) the subject matter of the document and the request to which the document is responsive, (g) the type of privilege claimed, and (h) all factual and legal bases for the claimed privilege.**

5. The singular form of any word shall include the plural, the masculine form of any word shall include the feminine, and the words "and" and "or" shall be construed both conjunctively and disjunctively.

6. This request is intended to be continuing, requiring you to produce whatever documents responsive to this request that you may subsequently become aware of or obtain.

## DEFINITIONS APPLICABLE TO SUBPOENA DUCES TECUM

A.  As used herein, the terms "You" and "Your" means Vulcan Capital, and all persons acting or purporting to act on its behalf, including agents, employees, attorneys, accountants, and investigators.

B.  As used herein, the term "MDHI" means MD Helicopters, Inc., and all current and/or former officers, directors, employees, agents, and/or affiliates of MD Helicopters, Inc.

C.  "Document" or "documents" include, but is not limited to, the following items within the possession, custody or control of you and/or any agent, representative or other person acting or purporting to act on behalf of you whether such items are typed, printed, recorded, reproduced by any mechanical process, copies or written by hand: contracts; communications; correspondence; e-mails and/or all records of e-mails; telegrams; memoranda; statements; records; reports; books; summaries and/or records of telephone conversations and/or telephonic communications (including but not limited to communications by telephone, pager, cellular phone, or facsimile); summaries and/or records of personal conversations; diaries; forecasts; orders; bills; invoices; checks; statistical statements; studies; graphs; charts; indexes; data sheets; data processing cards; analytical records; computer discs, computer tapes, computer hard drives or other computer format; minutes and/or records of meetings and conferences; reports and/or summaries of interviews; reports and/or opinions of consultants; records, reports and/or summaries of negotiations; brochures; lists; periodicals; pamphlets; circulars; trade letters; newspaper clippings; press releases; notes; drafts of documents; copies; marginal notations; photographs; drawings; tape recordings; letters; and all other written, printed, recorded or graphic matter or sound reproductions, however produced or reproduced.

D.  As used herein, the term "possession, custody or control" includes the joint or several possession, custody or control not only of the entity to whom this request is addressed, but also the joint or several possession, custody or control by each present or former agent of the entity, whether an attorney, employee, agent, sponsor, spokesperson, investigator, or representative.

E.  As used herein, the term "person" means the singular and plural of any natural person, firm, corporation, partnership, proprietorship, joint venture, organization, group of natural persons, or other association, including all agents, representatives, and employees.

F.  As used herein, the terms "pertaining to," "related to," "relating to," "concerning," "in connection with," or "connected with," when used to refer to a relationship between a document, fact, event or other tangible or intangible concept or relationship and some other matter stated in this Exhibit A to the Subpoena Duces Tecum, production, shall include any such document, fact, event or other tangible or intangible concept or relationship, which could, when interpreted in a reasonable manner, be viewed to have any bearing upon or relationship to the matter stated whether direct or indirect, and which is within the scope of discovery as defined in the Federal Rules of Civil Procedure.

## DOCUMENTS TO BE PRODUCED

1. Please produce all communications or documents concerning communications between Timothy J. Walsh, on the one hand, and Philip ("Phil") or Ruth Marsteller (collectively "Marsteller") and/or any attorney or agent for Marsteller (including, without limitation, Stanley Lerner, Stanley R. Lerner P.C., John Charland, the Charland Law Firm, Kevin Neal, Kimberly Allen, Gallagher & Kennedy, P.A., Phil Benson, or Gerald Robinson), on the other hand, between January 30, 2012 and the present.

2. Please produce all documents located in any hard-copy location used by Timothy J. Walsh or on any computer, server, email system, or other electronic media used by Timothy J. Walsh that mention or relate to Marsteller, MDHI, Lynn Tilton, Patriarch Partners, LLC, Eve II, LLC, and/or Norbert Vergez.

3. Please produce any drafts, copies, or iterations of the May 13, 2015 Timothy J. Walsh sworn letter.

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| Philip Marsteller, et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. **CV-14-01788-PHX-DLR** |
| | ) |
| MD Helicopters, Inc. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:

Timothy J. Walsh

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **See Exhibit A.**

| Place: **Ogletree Deakins** | Date and Time: |
|---|---|
| 800 Fifth Avenue, Suite 4100 | |
| Seattle, WA  98104 | 09/07/2015 9:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 8/20/15

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

MD Helicopters, Inc. _____ , who issues or requests this subpoena, are:

Thomas Arn, Esplanade Center III, 2415 E. Camelback Rd., Ste. 800, Phoenix, AZ 85016; Tel. 602-778-3702; Email:

**Notice to the person who issues or requests this subpoena** Tom.Arn@ogletreedeakins.com
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. CV-14-01788-PHX-DLR

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____    on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
   (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
   (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
   (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

## EXHIBIT A

### INSTRUCTIONS FOR USE FOR SUBPOENA DUCES TECUM

1.  In providing the documents described herein, you are requested to furnish all documents available to you, regardless of whether these documents are possessed directly by you, or by your attorney, employer, employees, agents, investigators, or other representatives.

2.  If any of these documents cannot be produced in full, produce to the extent possible, and specify the reasons for your inability to produce the remainder stating whatever information, knowledge or belief you have concerning the substance of the contents of such unproduced documents.

3.  If any document or thing requested was at one time in existence, but is no longer in existence, you shall so state, specifying for each document or thing: (a) the type of documents or thing, (b) the types of information contained therein, (c) the date upon which the document or thing ceased to exist, (d) the circumstances under which the document or thing ceased to exist, and (e) the identity of each person having knowledge or who had knowledge of the contents thereof.

4.  To the extent that any request is objected to, you are instructed to set forth all reasons for such objection. If any objection is made only to part of a particular request, that part shall be so specified and documents responsive to all other parts of the request shall be produced. **With respect to any document which you claim to be privileged or otherwise immune from production, you are to describe each document in your response as follows: (a) the document's date, (b) its title, (c) the identity of each person who prepared or wrote the document, (d) the identity of each person who received the document, (e) the type of document (for example, memorandum, letter, etc.), (f) the subject matter of the document and the request to which the document is responsive, (g) the type of privilege claimed, and (h) all factual and legal bases for the claimed privilege.**

5.  The singular form of any word shall include the plural, the masculine form of any word shall include the feminine, and the words "and" and "or" shall be construed both conjunctively and disjunctively.

6.  This request is intended to be continuing, requiring you to produce whatever documents responsive to this request that you may subsequently become aware of or obtain.

## DEFINITIONS APPLICABLE TO SUBPOENA DUCES TECUM

A.     As used herein, the terms "You" and "Your" means Timothy J. Walsh, and all persons acting or purporting to act on his behalf, including agents, employees, attorneys, accountants, and investigators.

B.     As used herein, the term "MDHI" means MD Helicopters, Inc., and all current and/or former officers, directors, employees, agents, and/or affiliates of MD Helicopters, Inc.

C.     "Document" or "documents" include, but is not limited to, the following items within the possession, custody or control of you and/or any agent, representative or other person acting or purporting to act on behalf of you whether such items are typed, printed, recorded, reproduced by any mechanical process, copies or written by hand: contracts; communications; correspondence; e-mails and/or all records of e-mails; telegrams; memoranda; statements; records; reports; books; summaries and/or records of telephone conversations and/or telephonic communications (including but not limited to communications by telephone, pager, cellular phone, or facsimile); summaries and/or records of personal conversations; diaries; forecasts; orders; bills; invoices; checks; statistical statements; studies; graphs; charts; indexes; data sheets; data processing cards; analytical records; computer discs, computer tapes, computer hard drives or other computer format; minutes and/or records of meetings and conferences; reports and/or summaries of interviews; reports and/or opinions of consultants; records, reports and/or summaries of negotiations; brochures; lists; periodicals; pamphlets; circulars; trade letters; newspaper clippings; press releases; notes; drafts of documents; copies; marginal notations; photographs; drawings; tape recordings; letters; and all other written, printed, recorded or graphic matter or sound reproductions, however produced or reproduced.

D.     As used herein, the term "possession, custody or control" includes the joint or several possession, custody or control not only of the individual to whom this request is addressed, but also the joint or several possession, custody or control by each present or former agent of the individual, whether an attorney, employee, agent, sponsor, spokesperson, investigator, or representative.

E.     As used herein, the term "person" means the singular and plural of any natural person, firm, corporation, partnership, proprietorship, joint venture, organization, group of natural persons, or other association, including all agents, representatives, and employees.

F.     As used herein, the terms "pertaining to," "relate to," "relating to," "concerning," "in connection with," or "connected with," when used to refer to a relationship between a document, fact, event or other tangible or intangible concept or relationship and some other matter stated in this Exhibit A to the Subpoena Duces Tecum, production, shall include any such document, fact, event or other tangible or intangible concept or relationship, which could, when interpreted in a reasonable manner, be viewed to have any bearing upon or relationship to the matter stated whether direct or indirect, and which is within the scope of discovery as defined in the Federal Rules of Civil Procedure.

## DOCUMENTS TO BE PRODUCED

1.  Please produce all documents (including, but not limited to, all emails, text messages, memoranda, correspondence, audio recordings, phone records, thumb drives, and other communications) in Your possession, custody or control, that mention or relate to Philip or Ruth Marsteller (collectively, "Marsteller"), MDHI, Lynn Tilton, Patriarch Partners, LLC, Eve II, LLC, and/or Norbert Vergez.

2.  Please produce all communications or documents concerning communications between You, on the one hand, and Marsteller and/or any attorney or agent for Marsteller (including, without limitation, Stanley Lerner, Stanley R. Lerner P.C., John Charland, the Charland Law Firm, Kevin Neal, Kimberly Allen, Gallagher & Kennedy, P.A., Phil Benson, or Gerald Robinson), on the other hand, between January 30, 2012 and the present.

3.  Please produce all documents or communications that mention or relate to Marsteller, MDHI, Lynn Tilton, Patriarch Partners, LLC, Eve II, LLC, and/or Norbert Vergez (including, but not limited to, all emails, text messages, memoranda, correspondence, audio recordings, phone records, thumb drives, and other communications) that You have provided to or exchanged with Marsteller, or any attorney or agent for Marsteller (including, without limitation, Stanley Lerner, Stanley R. Lerner P.C., John Charland, the Charland Law Firm, Kevin Neal, Kimberly Allen, Gallagher & Kennedy, P.A., Phil Benson, or Gerald Robinson), between January 30, 2012 and the present.

4.  Please produce all documents or communications that mention or relate to Marsteller, MDHI, Lynn Tilton, Patriarch Partners, LLC, Eve II, LLC, and/or Norbert Vergez (including, but not limited to, all emails, text messages, memoranda, correspondence, audio recordings, phone records, thumb drives, and other communications) exchanged between You, on the one hand, and any other person, on the other hand, between January 30, 2012 and the present.

5.  Please produce any drafts, copies, or iterations of Your May 13, 2015 sworn letter.