FILED

2015 Sep-15  PM 04:54
U.S. DISTRICT COURT
N.D. OF ALABAMA



# Exhibit 6

## Vergez Directs SESI to Buy From Avia Baltica

## Mark Young

| | |
|---|---|
| **From:** | Mark Young [myoung@desmalter.com] |
| **Sent:** | Thursday, November 18, 2010 12:40 PM |
| **To:** | 'Litwinowicz, Michael V CTR OSD POLICY' |
| **Subject:** | RE: Check my draft email |

That is what happened.  We should just make a record of this and see if they buy them from AviaBaltica, and how much they pay.


I got a call today from Mark Young, who works for DTI.  DTI is a U.S. contractor with considerable interests in current and future Mi-17 business with DoD.

During the conversation, Mark informed me that he was contacted on Monday, 15 November, by a representative of a company called SES.  SES has been contracted by the Project Management Office - Non Standard Rotary Wing Aircraft (PM NSRWA) to install the Western cockpits in the Fort Rucker Mi-17 aircraft.  The SES rep called Mark to get a price quote for Mi-17 technical publications.  The SES rep said he was getting three quotes from different vendors to comply with federal acquisition regulations (FAR), but he said not to put too much work into developing the quote.

The SES rep said that SES was directed by PM NSRWA to buy the pubs from AviaBaltica.  The three quotes were just to create the appearance of competitive bidding.

-------

Thanks,

Mike

Michael Litwinowicz
SO/LIC&IC, DASD (CN&GT)
COM 703-692-4180
DSN 312-222-4180
BB: 240-899-9810
SIPR  Michael.Litwinowicz.ctr@osd.smil.mil

1

## Mark Young

**From:**   Mark Young [myoung@desmalter.com]
**Sent:**   Wednesday, March 09, 2011 12:09 PM
**To:**    'hotline@dodig.mil'
**Subject:** Input for Audit Number D2011-D000AS-0030.000

From:   Mark Young
        Defense Technology Inc. (DTI)
        701 Pratt Avenue
        Huntsville, AL 35801
        (256) 603-7978

Subject: DTI provided 4 new Mi-17 helicopters to Afghanistan in 2009 via a USN contract.  DTI also provides Mi-17 intermediate level Mi-17 maintenance training in Afghanistan (KRCC contract) and have held other Mi-17 support contracts.

DTI protested the 2008 ARINC 22 aircraft sole source and the 2009 TSMO sole source to ATE for 2 used Mi-17 helicopters.  These two protests were dismissed as untimely, thus the issues raised in the protests were not addressed.  We can provide information that indicated that the program office improperly steered work to particular vendors, directed contractors to ignore quotes from eligible vendors, and sought to impede other services efforts.

As an example, a contractor (SESI) supporting NSRWA contracted DTI to obtain a quote on Mi-17 documentation.  Upon learning that we had mutual friends, the buyer informed me they had been instructed to only purchase the documents from AviaBaltica, a Lithuanian company with close ties to NSRWA.  He informed me they were only making calls to show they had approached other sources as required by the FAR.  He informed me they were paying $340k for these documents.  I followed up with a written quote of $40k for these documents.  When I contacted the head buyer at SESI, he informed me that there was some mistake, they had no requirement for these documents.  However, I have since been informed that SES purchased these documents from Aviabaltica for $340k a few weeks later.  DTI supplied these same documents to the USN under our USN contract for the four new helicopters.  I have records of who called and our quote.

I have records showing that that AviaBaltica and its Russian parent company Spark forged US End Use Certificates to avoid political issues in Russia.

I would be happy to meet with you to discuss these issues.

V/r

Mark Young

**Management and Oversight for DoD Acquisition and Support of Non-Standard Rotary Wing Aircraft (D2011-D000AS-0030.000) The DoD OIG is determining whether DoD officials properly and effectively managed the acquisition and support of Non-Standard Rotary Wing Aircraft, such as the Russian Mi-17 aircraft, to include those acquired using the Afghanistan Security Forces Fund or any DoD-related requirements.  Multiple projects may be initiated under this objective.  The DoD OIG began this project during the 1st Quarter of FY**

**From:** Mark Young [myoung@desmalter.com]
**Sent:** Tuesday, November 16, 2010 1:24 PM
**To:** 'rod.thompson@ses-i.com'; 'Bob Wrinkle'
**Cc:** 'Mark Russell'
**Subject:** Mi-17 documentation

Sir, DTI was contacted by SES as a source for Mi-17 documentation.  DTI provides OEM technical documentation for all variants of Mi-17 aircraft.  We also have overhaul level documentation as well.

Prices for complete aircraft sets averages $40k.  The Mi-17V5 set is available for $20k.  We have the documentation on some models in the Huntsville office for immediate delivery.

V/r,

Mark Young
Defense Technology Inc.
(256) 603-7978

**The following documentation is available for all Mi-17 variants.  These documents make up an aircraft documentation "set".**

Technical Manual. The book 1. The general information.
Technical Manual. The book 2. A part 1. A airframe.
Technical Manual. The book 2. A part 2. A airframe.
Technical Manual. The book 3. A part 1. Helicopter systems.
Technical Manual. The book 3. A part 2. Helicopter systems.
Technical Manual. The book 4. The Power-plant.
Technical Manual. The book 5. The radio-electronic equipment.
Technical Manual. The book 6. The transport equipment.
Technical Manual. The book 7. The aviation equipment.

Maintenance Manual. A part 1. Airframe, helicopter systems, power-plant and the transport equipment.
Maintenance Manual. A part 2. The aviation equipment.
Maintenance Manual. A part 3. The radio-electronic equipment.

Flight manual. A part 1. Actions of crew.
Flight manual. A part 2. Main info on helicopter

Flight manual. Section 6. Additions.
Norms of expense of spare parts and materials at 100 hour operation.

Helicopter Leveling diagrams. (for W&B)
The table of flight control adjustments.
The table of tail rotor shaft alignment measurements table.
The report of write-off of deviation of compasses.
Calibration diagrams of on-board controls charts БУР-1-2 cep.2

## Mark Young

**From:** Mark Young [myoung@desmalter.com]
**Sent:** Tuesday, April 19, 2011 10:01 AM
**To:** 'Faller, Phillip, OIG DoD'
**Subject:** RE: Meeting

  

SPARK          Email to OSD CN.txt      Mi-17
LETTERS.pdf (9 MB)    (5 KB)        umentation quote to

Thank you for taking the time to meet with me last week. One funny thing, I forgot to discuss the issue that I most wanted to bring to your attention.

On November 8th, 2010, I received a call from a buyer (Mr. Nick Allen) at SESI, asking if DTI could provide Mi-17 manuals. He had seen our press release mentioning our donation of manuals to ANAAF. I told him we could. As we talked, we realized we had met before and began to have a friendly discussion. He informed me not to get excited about the document buy, as the program office had instructed them they had to buy the documents from a company called "Avia Baltica" and he was just shopping for two other quotes or no quotes for the FAR justification. He then asked me confidentially what I thought of Avia's price - $340k. I told him that was a great price - for Avia as I could sell them for $40k.

A few days later, I called the head of SESI contracting, Rod Thompson, to discuss the possible purchase. He told me I had been misinformed; they had no requirement for Mi-17 documentation. Regardless of this, I decided to send him a quote on the documentation.

A week later I relayed these conversations to Mike Libinowitz at OSD CN and he told me to take it to the IG, but I replied we should wait and see if they bought the docs from SPARK. FTA later informed me SESI did buy the documents.

Since both FTA and DTI have open contracts with the Army to deliver Mi-17 documentation (as part of the overhauls), it is strange the Army should say only Borisov can supply docs.

ATTACHMENTS: 1) The original EUC for the SPARK overhauls that was provided to FTA by the USG is on Page 29. One of the IG staff requested this.
2) The email to OSD telling them about SESI being directed to sole source the Mi1-7 documents to Borisov.
3) My quote for docs to SESI.

Is there anything else I owe you from our discussions?

V/r

Mark Young
DTI


-----Original Message-----
From: Faller, Phillip, OIG DoD [mailto:Phillip.Faller@DODIG.MIL]
Sent: Tuesday, April 12, 2011 6:22 AM
To: myoung@desmalter.com
Subject: RE: Meeting

Sorry I didn't responded sooner but I was out of the office on Monday.

I was hoping for a short vacation but at least it looks like this week will have a budget for the rest of the year... I look forward to meeting you tomorrow.

Phillip M. Faller, CISA

Project Manager

DOD OIG, AUD-ACM


Work  - 703.604.8360 DSN 664

BB    - 571.357.0891

Fax   - 703.604.9204

Email - phillip.faller@dodig.mil

        phillip.faller@dodig.smil.mil

-----Original Message-----

From: Mark Young [mailto:myoung@desmalter.com]

Sent: Tuesday, April 19, 2011 11:01 AM

To: Faller, Phillip, OIG DoD

Subject: RE: Meeting


Thank you for taking the time to meet with me last week.  One funny thing, I forgot to discuss the issue that I most wanted to bring to your attention.


On November 8th, 2010, I received a call from a buyer (Mr. Nick Allen) at SESI, asking if DTI could provide Mi-17 manuals.  He had seen our press release mentioning our donation of manuals to ANAAF.  I told him we could.

As we talked, we realized we had met before and began to have a friendly discussion.  He informed me not to get excited about the document buy, as the program office had instructed them they had to buy the documents from a company called "Avia Baltica" and he was just shopping for two other quotes or no quotes for the FAR justification.  He then asked me confidentially what I thought of Avia's price - $340k.  I told him that was a great price - for Avia as I could sell them for $40k.


A few days later, I called the head of SESI contracting, Rod Thompson, to discuss the possible purchase.  He told me I had been misinformed; they had no requirement for Mi-17 documentation.  Regardless of this, I decided to send him a quote on the documentation.


A week later I relayed these conversations to Mike Libinowitz at OSD CN and he told me to take it to the IG, but I replied we should wait and see if they bought the docs from SPARK.  FTA later informed me SESI did buy the documents.


Since both FTA and DTI have open contracts with the Army to deliver Mi-17 documentation (as part of the overhauls), it is strange the Army should say only Borisov can supply

docs.


ATTACHMENTS:  1) The original EUC for the SPARK overhauls that was provided to FTA by the USG is on Page 29.  One of the IG staff requested this.

2) The email to OSD telling them about SESI being directed to sole source the Mil-7 documents to Borisov.

3) My quote for docs to SESI.


Is there anything else I owe you from our discussions?


V/r


Mark Young

DTI




-----Original Message-----

From: Faller, Phillip, OIG DoD [mailto:Phillip.Faller@DODIG.MIL]

Sent: Tuesday, April 12, 2011 6:22 AM

To: myoung@desmalter.com

Subject: RE: Meeting


Sorry I didn't responded sooner but I was out of the office on Monday.


I was hoping for a short vacation but at least it looks like this week will have a budget for the rest of the year...  I look forward to meeting you tomorrow.




-----Original Message-----

From: Mark Young [mailto:myoung@desmalter.com]

Sent: Monday, April 11, 2011 9:55 AM

To: Faller, Phillip, OIG DoD

Subject: RE: Meeting

# Exhibit 7

## Vergez Allows Uncertified Work by Avia Baltica

**Col. Vergez issued a sole source task order award to SES/Avia to perform cockpit modifications on four US Army Mi-17 aircraft.  The statement of work required the installations be certified by Helicopter manufacturer Mil Moscow.  DTI provided proof to US Army that Mil is not certifying them.  Vergez office chose not to investigate this matter**

By failing to insure that SESI was receiving air worthiness certificates from the manufacturer, the Army was putting the lives of its pilots at risk.

ФЕДЕРАЛЬНАЯ СЛУЖБА
ПО ВОЕННО-ТЕХНИЧЕСКОМУ
СОТРУДНИЧЕСТВУ

Moscow, August *19* 2011 г.

Dear Mr.Russel,

I would like to inform you, that  Mil has developed a number of bulletins for installation of Western avionics to Mi-17 helicopters, including those mentioned in your letter. Mil has not authorized any U.S. company to perform the installation of these systems, and is therefore not certifying any such installations.   Mil currently has no legal agreement with AOP SPARK or any U.S. company to provide the required installation bulletins or cooperate in the installation of these systems.

Please accept, Mr. Russel, the assurance of my highest consideration.

S.Garmash

Deputy chief of the Department for military-technical cooperation with foreign countries

Mr. M. Russel,
President of
«Research International, Inc»,
USA,
Huntsville

# Exhibit 8

## Vergez Offers Quid Pro Quo on Behalf of Avia Baltica

*Attachment 2*



**DEPARTMENT OF THE ARMY**
PROGRAM EXECUTIVE OFFICE, AVIATION
NON-STANDARD ROTARY WING AIRCRAFT PROJECT OFFICE
215 WYNN DRIVE, SUITE 201
HUNTSVILLE, AL 35805-1944

REPLY TO
ATTENTION OF

June 6, 2011

Office of the Project Manager

Mr. Mikhail Dmitriev
Director General
Federal Service for Military-Technical Cooperation
18/1, Ovchinnikovskaya Emb.
Moscow, 115324, Russian Federation

Dear Mr. Dmitriev:

Please accept my sincere salutations and deepest respect for you and the great team at the Russian Federal Service for Military and Technical Cooperation (FSMTC).

The purpose of my letter is to present you with the US Government's practice regarding "Full and Open Competition" for service type contracts that include aircraft overhauls.

In accordance with US Federal Acquisition Regulations (FARs), Defense Acquisition Regulations (DFARs) and US Department of Defense (DoD) acquisition policies, and procedures, all DoD agencies are required to perform acquisition activities within the scope of a full and open competitive environment. Although the FARs, DFARs and DoD policies allow for exceptions, the standard practice is full and open competitions. Such is the case with the five Mi-17 aircraft overhauls for the country of Pakistan that you cite in your May 27, 2011 letter to Mr. Keith Webster (see enclosure).

Officials from the US Government are keenly aware and respect Russian Federation law which stipulates that the procurement and support activities inside the territories of the Russian Federation involving Military End-Use items must be worked through the Federal Unitary Enterprise, Rosoboronexport.

The Pakistan Mi-17 aircraft identified in the enclosure are under contract by the US Government with Science and Engineering Services (SES) company. The US Government awarded the latter contract to SES following a full and open competition. The statement of work (SOW) provided to SES includes the requirement that SES and their competed sub-contractor work with Rosoboronexport in accordance with Russian Federation law.

In an effort to build on the Project Management Office (PMO), Non-Standard Rotary Wing Aircraft (NSRWA) relationship with their new Original Equipment Manufacturer (OEM), Rosoboronexport, I, as the Project Manager, NSRWA will exercise a task order through the Engineering Services portion of the contract to purchase 21 Mi-17V5 Military Transport Aircraft for Afghanistan. The intent of the task order is for Rosoboronexport to provide the

-2-

US Government prime, SES, with technical engineering assistance for the five Pakistan Mi-17s awaiting overhaul.

I believe that this approach supports the US Government's requirement for full and open competition as well accommodating Russian Federation law.

You have my commitment that the US Government will continue to honor our agreement with the latter, consistent with our past meetings and signed protocols.

Sincerely,

Norbert E. Vergez
Colonel, US Army
Project Manager, Non-Standard
    Rotary Wing Aircraft Project Office

Enclosure

*Attachment 3*

Moscow, 27th June 2011

Dear Mr. Webster,

I would like to assure you in my highest respect to you and would like to inform you that on 6th June 2011 FSVTS of Russia has received an inquiry from Mr Vergez related to the organization of the capital repair and modernization of helicopters _____ for the interest of Pakistan.

In the letter, there is made an attempt to implement into the signed agreement on the delivery of 21 helicopters _____ for _____, the technical and engineering support by the company SES in organizing of the repair of aforesaid helicopters. And according to the Russian law it is impossible. We would like to call your attention that neither of FSVTS of Russia nor FGUP Rosoboronexport have received any applications or information from the company SES. As we have already informed you, in accordance with the procedure, prescribed by Russian law, the foreign company should apply to FSVTS of Russia with an official application on the delivery of commodities for military purpose or carrying out services, as well to enclose a set of documents, translated into Russian language and legalised in Russian Consulate. Afterwards there would be appointed a performer of the checking of such application      (in our case it would be FGUP Rosoboronexport) and the repair company for carrying out the works.

The company that is carrying out the works pursuant to the contract is ZAO SPARK. According to the statement of the manufacturer of the helicopters OAO "Kazansky helicopters  plant" two helicopters (No 93255 and No 93474) are prepared in transportable variant for military purpose with the elements of defense and the other two are for the civil purpose. Presented by the Ministry of defense, the Certificate of End User (enclosed herein) is signed by the colonel Mr. Vergez. This document was not legalized in Consulate. Would you please certify authenticity of the presented certificate of end user, as well the authority of Mr Vergez or his deputy for its signing.

As you already know, how many efforts we had to put to mend a mistake, that was made during the importation  of two American helicopters into Russia to the company "SPARK". The similar situation should not take place as we shall not be able to solve it as the previous one. We have already told you that the company "SPARK" is not the subject of VTS and is not entitled to carry on the negotiations, and all the more to sign the documents concerning the commodities for military_purpose.

I would like to remind you that it was arranged between us  that in all questions, related to the purchasing and services in affair of the Ministry of defense you would contact us to avoid misunderstandings and all other problems and we would respond immediately on your requests. Would you please accept, Mr Webster, of assurance of my deepest respect.

Sincerely yours,

ФЕДЕРАЛЬНАЯ СЛУЖБА
ПО ВОЕННО-ТЕХНИЧЕСКОМУ
СОТРУДНИЧЕСТВУ

Москва⟨⟩ июня 2011 г.

Уважаемый господин Вэбстер!

Имею честь засвидетельствовать свое уважение и информировать Вас о том, что 6 июня 2011 г. в адрес ФСВТС России поступило обращение от полковника Н.Вергеза по вопросу организации капитального ремонта и модернизации вертолетов Ми-17 в интересах Пакистана.

В письме делается попытка внедрения в подписанный контракт на поставку 21 вертолета Ми-17В-5 для Афганистана технико-инженерного содействия в организации ремонта указанных вертолетов компанией SES. Согласно российскому законодательству это невозможно. Обращаем Ваше внимание на то, что ни ФСВТС России, ни ФГУП «Рособоронэкспорт» не имеют никаких обращений и информации от компании SES. Как мы Вас ранее информировали, в соответствии установленной российским законодательством процедурой иностранная компания должна обратиться в ФСВТС России с официальным обращением о поставке продукции военного назначения или оказании услуг и приложить соответствующий пакет документов, переведенный на русский язык и заверенный в российском консульстве. Затем будут определены исполнитель проработки данного обращения (в нашем случае ФГУП «Рособоронэкспорт») и ремонтное предприятие для выполнения работ.

Вместе с тем исполнителем работ по контракту является ЗАО «СПАРК». В соответствии с заключением производителя вертолетов ОАО «Казанский вертолетный завод» два вертолета (№ 93255 и № 93474) изготовлены в транспортном варианте военного назначения с элементами вооружения, а другие два (№ 95840 и № 95716) в транспортном варианте гражданского назначения. Представленный Министерством Сухопутных

Господину Кейту Б.Вэбстеру,
заместителю помощника
Министра Сухопутных войск
Соединённых Штатов Америки
по вопросам экспорта ПВН
и военного сотрудничества
г. В⟨…⟩

# Exhibit 9

## Vergez Makes New Aircraft Purchases Conditional

DTI reported this improper attempt to bribe the Russians into an exclusive business relationship with SESI/Avia Baltica as a condition on new work to the DoD IG.  Later, DTI arranged for DCIS Special Agent Lance Stamper to have lunch with Rosoboronexport's lawyer who attended these meetings.  During this lunch, the Russian lawyer confirmed that Vergez had set up a side meeting with the Russians (away from Secretary Webster and other government officials attending) and demanded they form an exclusive relationship with SESI/Avia Baltica as a condition of new sales. (See attachment – email from Mark Young to Lance Stamper summarizing the meeting discussions)

## Mark Young

**From:**  Mark Young [myoung@desmalter.com]

**Sent:**  Wednesday, February 26, 2014 8:35 AM

**To:**  'Stamper, Lance E., OIG DoD'

**Subject:** Meeting with Victor T, February 24, 2014.

Lance, good traveling with you.  A quick note to summarize the two key points that came from the meeting,

Key Points:

1)  DCAA audit requested by the Defense Authorization Act.
   a.  V stated that they prepared to address this when NSRWA and auditors came to Russia, but were told by NSRWA it was not to be discussed.
   b.  V, representing Roso, attempted to arrange a meeting in the US with DCAA auditors. NSRWA sent a letter to Roso stating the meeting should not occur as proprietary info and conflicts of interest could occur.  Roso canceled the meeting.
2)  During discussions in Moscow about the exercise of the option to the 21 aircraft contract, the army put on two conditions.  The first was that the Russians release the two aircraft being held at Spark.  Then in a private meeting Vergez stated that the second condition was Roso reaching a deal to work under Spark /SESI on future Mi-17 business.  The Russians could not accept the second condition.

V/r

Mark Young
**Defense Technology Inc.**
www.DefTechInc.com
256-603-7978

**"Bonitas non est pessimis esse meliorem." Seneca**

9/14/2015

# Exhibit 10

**Vergez Directs Northrop to Ignore False Documents**

**Col. Vergez directed Northrop Grumman to ignore the fact that its subcontractor (Spark) submitted a fake end use certificate to the Russian government bearing the forged signature the Assistant Secretary of Defense Weschler.**

This can best be addressed by Northrop Grumman or FTA as DTI's information is second hand. DTI's interest in this is simple.  If our competitors are allowed to break the rules without penalty, we will be at a major competitive disadvantage.   This document was created by AviaBaltica or Spark, both of which are owned by Borisov.  Pavel Borisov sent a letter stating the helicopters were civil when he knew or should have known they were military.

## Mark Young

**From:** Mark Young [myoung@desmalter.com]

**Sent:** Friday, September 27, 2013 9:38 AM

**To:** 'lance.stamper@dodig.mil'

**Subject:** Pavel, Avia, Forgeries

As to the question of the forged documents used to import the Northrop/FTA helicopters to Spark:

1) There were two forged documents. The first is the forged US EUC. The second is the forged Kazan letter stating the aircraft were manufactured in civil configuration. Both were needed to get the improper Russian import license.

2) Pavel is sure to say he did not create the forged EUC. However, it was clearly Pavel who provided the forged Kazan letter to FTA as an attachment to his Avia Baltica letter to FTA dated 27/10/2009. Since we can be certain Pavel forged that letter, I think we can be fairly confident he would not hesitate to forge the EUC. The simplest answer is usually the answer.

V/r

Mark Young
**Defense Technology Inc.**
www.DefTechInc.com
256-603-7978

**"Bonitas non est pessimis esse meliorem." Seneca**

*Attachment*

Office of the Deputy assistance Secretary of Defense for
Counternarcotics and Global Threats
2500 Defense Pentagon
Washington, D.C. 20301-2500, USA

### END USER CERTIFICATE

The Department of Defense, 2500 Defense Pentagon, Washington D.C. 20301-2500, USA, will be the final End User of the following service:

**Overhaul of two Mi-17-1V Helicopters**

Serial Number: 108M06

Serial Number: 108M10

Department of Defense herewith declares that the overhauled helicopters will not be used for military actions and will be used exclusively for civil transportation purposes and in rescue missions. The helicopters will not re-export or transfer overhauled helicopters to other destination or to other subjects.

00 6 2008

Robert Vierkant
Deputy Director, CENTCOM
Office of the Deputy Assistant
Secretary of Defense for
Counternarcotics and Global Threats

*False*

ОАО
СПАРК

Attachment 67 

Office of the Deputy Assistant Secretary of Defense for
Counternarcotics and Global Threats
2500 Defense Pentagon
Washington, D.C.  20301-2500, USA

OCT   6 2009

### End User Certificate

The Department of Defense, 2500 Defense Pentagon, Washington D.C.
20301-2500, USA, will be the final End User of the following service:

Overhaul of two Mi-17-1V Helicopters

Serial Number: 108M06

Serial Number: 108M10

Overhauls will be ensured by company ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ on the basis of
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
CNTPO TORP 0164 with the following sub-contractors:

AviaBaltika Aviation Ltd., Karmelava, LT - 54458 Kaunas, Lithuania.

This EUC covers transportation of helicopters designated for overhaul
to the designated European repair facility in Lithuania and back to the
originator's location after the overhaul.

The Department of Defense will be the end user of the subject
helicopters after overhaul completion.

Robert Vierkant
Deputy Director, CENTCOM
Office of the Deputy Assistant
Secretary of Defense for
Counternarcotics and Global Threats