FILED

2015 Sep-15 PM 04:54
U.S. DISTRICT COURT
N.D. OF ALABAMA



# Exhibit 11

## Vergez overpays for Avia Parts

We have used three subcontractors.  All are FFP providers.  They are:

Ukrspetsexport - A division of the Ukrainian government.  They are our sub to perform the overhauls.
Cornische Aviation Services - A UAE company providing personnel and other misc assistance as required in Afghanistan.
US Training - A US company which provides housing support in Afghanistan.

Let me know what else you require.  Sincerely yours,

Mark Young
DTI


-----Original Message-----
From: Martin, Jason A., OIG DoD [mailto:Jason.Martin@DODIG.MIL]
Sent: Friday, February 25, 2011 8:16 AM
To: myoung@desmalter.com
Cc: Diem, Carrie A., OIG DoD; Williams, Zachary M., OIG DoD
Subject: DoDIG Audit of Counter Narcoterrorism Technology Program Office's Other Direct Costs

Mr. Young,

Good Morning. I'm an auditor on the Audit of the DoD Counter Narcoterrorism Technology Program Office's Other Direct Costs (Project No. D2011-D000AS-0004.000). I received your contact information from Lisa Nguyen, Contracts Negotiator, Raytheon Technical Services and she identified Defense Technology Inc (DTI) as a subcontractor for contract W9113M-07-D-0008, task order 0024, T/ORP 0226 "Mi-17 and Mi-35 Overhaul and Repair". Can you please provide us a list of subcontractors that perform work for DTI under this task order. If you need any additional information please let me know.

Thank you,

Jason Martin
Auditor
DoD Office of the Inspector General
Acquisition and Contract Management
(703) 604-9012
jason.martin@dodig.mil

-----Original Message-----
From: Mark Young [mailto:myoung@desmalter.com]
Sent: Tuesday, June 12, 2012 4:28 PM
To: Martin, Jason A., OIG DoD
Subject: RE: DoDIG Audit of Mi-17 Modifications and Overhauls (Project No.
D2012-D000AS-00075.000)

Sir, will you be coming here or will it be on the phone?  Based on this we will set a time
for Thursday.  I will pull the  contracts.

V/r

Mark Young
Defense Technology Inc.
www.DefTechInc.com
256-603-7978

"Bonitas non est pessimis esse meliorem." Seneca


-----Original Message-----
From: Martin, Jason A., OIG DoD [mailto:Jason.Martin@DODIG.MIL]
Sent: Tuesday, June 12, 2012 2:53 PM
To: myoung@desmalter.com
Cc: Holliman, Benita, OIG DoD; Chavez, Bryan M., OIG DoD; McLaurin, Adam J., OIG DoD;
Molina-Rodriguez, Hector J., OIG DoD; Rombola, Diana L., OIG DoD
Subject: DoDIG Audit of Mi-17 Modifications and Overhauls (Project No.
D2012-D000AS-00075.000)

Mr. Young,

Good afternoon.  We met with Mr. William Gianfagna and Mr. Mike Lofrumento from Raytheon
to discuss contract W9113M-07-D-0008-0024.  They provided their consent for the DoDIG to
contact DTI.  Ms. Benita Holliman is my Project Manager and I believe you had previous
conversations with her related to Mi-17 overhauls.

The DoDIG has interest in discussing some subcontract actions related to overhaul services
for 4 Pakistan Mi-17s under contract W9113M-07-D-0008-0024. This request is in reference
to the subject audit (attached), which is not directly related to Raytheon or DTI. This
request is to gather background information on the subcontract between Raytheon and DTI
and also the subcontract between DTI and Ukrspetsexport for the 4 Pakistan Mi-17
overhauls.

We would like to set up a meeting for Thursday, June 14th if possible.
Shouldn't take more than 15 - 20 minutes.

Thank you for your assistance.

V/R,

Jason A. Martin, Auditor
DoD Office of the Inspector General
Acquisition and Contract Management
4800 Mark Center Drive
Suite 13F25-04
Alexandria, VA 22350
Office:  (703) 604-9012
E-mail:  Jason.Martin@dodig.mil


-----Original Message-----
From: Mark Young [mailto:myoung@desmalter.com]
Sent: Friday, February 25, 2011 9:28 AM
To: Martin, Jason A., OIG DoD
Subject: RE: DoDIG Audit of Counter Narcoterrorism Technology Program Office's Other
Direct Costs

teleconference:

1. DTI's Mi-17 Part Price List;

2. Subcontract and/or purchase order between DTI and Ukrspetsexport/SAP.

Thank you again for all your help and please let me know if you need further clarification concerning my questions or documentation request.


V/R,


Jason A. Martin, Auditor
DoD Office of the Inspector General
Acquisition and Contract Management
4800 Mark Center Drive
Suite 13F25-04
Alexandria, VA 22350
Office:  (703) 604-9012
E-mail:  Jason.Martin@dodig.mil


-----Original Message-----
From: Mark Young [mailto:myoung@desmalter.com]
Sent: Monday, June 18, 2012 3:44 PM
To: Martin, Jason A., OIG DoD
Subject: RE: DoDIG Audit of Mi-17 Modifications and Overhauls (Project No. D2012-D000AS-00075.000) Email 1

I don't think our contract with Raytheon would be helpful.  We have a blanket master agreement they execute PO's off of.  Also, you would have no hope of ever figuring out the Raytheon PO structure.  Instead, here is our bid price breakdown as awarded by Raytheon.

V/r


Mark Young
Defense Technology Inc.
www.DefTechInc.com
256-603-7978

"Bonitas non est pessimis esse meliorem." Seneca


-----Original Message-----
From: Martin, Jason A., OIG DoD [mailto:Jason.Martin@DODIG.MIL]
Sent: Friday, June 15, 2012 8:15 AM
To: Mark Young
Cc: Holliman, Benita, OIG DoD; Chavez, Bryan M., OIG DoD; Molina-Rodriguez, Hector J., OIG DoD; Rombola, Diana L., OIG DoD
Subject: RE: DoDIG Audit of Mi-17 Modifications and Overhauls (Project No. D2012-D000AS-00075.000) Email 1

Mr. Young,

Good morning.  Thank you for meeting with us yesterday and providing the breakout of the termination cost for the Pakistan Overhauls and attachments.
The following are additional documents that we requested during yesterday's teleconference:

1. Mi-17 Part Price List;

2. Contract number of Air Force Overhauls being performed in Kabul, Afghanistan;

3.  Subcontract between Raytheon and DTI (Pending Raytheon Approval) and subcontract and/or purchase order between DTI and Ukrspetsexport.

# Exhibit 12

## Vergez Office Presents False Document in Protest

*Attachment 5*

April 8, 2013

Mr. David Sabine
Attorney Advisor
AMCOM Legal – AMSAM-L

RE: Bid Protests B-405013.4 and B-408065

Dear Mr. Sabine:

As you know, in October 2012, Cornische Aviation Maintenance protested the sole source award of five Mi-17 overhauls to the Huntsville, Alabama-based company SESI (GAO protest B-405013.4).

In defending this case, the Army argued that the decision to select the SESI subcontractors was made solely by SESI and not the government, and thus an issue outside the scope of a GAO protest. To provide evidence of this contention, the Army counsel made use of a sworn statement by SESI COO Ralph Pallotta. In his statement, declared under penalty of perjury, pursuant to 28USC 1746, Pallotta swore that:

1. On March 18, 2011 the Army submitted its RFP to SESI (para. 2)
2. On or about April 1, 2011, the Army awarded Mod 4 to Delivery Order 0102 (para. 2)
3. In April 2011, SES developed selection criteria, solicited and received subcontractor proposals for the overhaul effort (para. 3)
4. On April 12, 201 SES submitted results of its analysis to Army but left identities of the vendors anonymous (para.5)

However, as part of the Army document submission in the current Cornische protest (B-408065), the Army provided a document titled "Combined Contracting Officer's Statement and Supporting Legal Memorandum" dated November 19, 2012 and signed by the contracting officer, Teresa Mayberry, and you (David Sabine of the AMCOM legal counsel office). This document was not provided to Cornische during the protest. Cornische is unaware if it was provided to the GAO. What is troubling about this document is that it contains facts that directly contradict the SESI COO's sworn statements. For instance, the contracting officer's document states:

1. On March 28, 2011 SESI submitted its proposal to the Army indicating it had chosen AVB as a subcontractor for the overhauls and on April15, SESI formalized that decision (page 9, para.4)
2. On April 11, 2011 the Army awarded Mod 4 to SESI (page 2, para. 2)

3. Army tech evaluation of SESI's proposal – " the only reference made was as follows, "Subcontractor effort:  the description contained in the contractors approach (indicating AVB's proposal, which had already been selected by SESI as announced in the firm's email of 3-28-11) to the overhaul appears reasonable ..." (page 10, para. 2 and footnote 5)

It is clear that SESI COO Pallotta lied under oath about:

1. When SESI solicited subcontractors
2. When the Army awarded the subject modification
3. When SESI developed selection criteria, solicited and received subcontractor proposals for the overhaul effort
4. The fact that SESI provided the chosen subcontractor's identity to the Army in SESI's proposal submission.

These lies were clearly intended to further the Army's case that SESI did not select subcontractors until after the Army awarded Mod 4 to SESI.

Even more troubling than the perjury by Pallotta is the fact that the Army counsel knew, or should have known, that the statements made by Pallotta were directly contradicted by the contracting officer's own account of the award and pre-award activities.  The counsel's office withheld this information which would have been extremely valuable to Cornische's case.  It is clear that the Army counsel's failure to further investigate this clear contradiction, and instead to suppress information that contradicted Pallotta's account, makes them complicit in this presentation of false testimony.

Per the guidance of Federal Procurement Integrity Act, Cornische is hereby providing notice that it believes an offense has been committed by SESI and the Army counsel in presenting known, false sworn testimony as part of a GAO protest Agency Report.  Please let us know if this information needs to be presented to any other organization at the Army.

Sincerely

Jimmy Rafiee

*Attachment 5*

AGREED UPON PUBLIC VERSION

## United States
## Government Accountability Office

| | |
|---|---|
| In the Protest of: ) | |
| ) | B-405013.4 |
| Cornische Aviation & Maintenance, LTD ) | |
| ) | |
| On behalf of Intervenor, Science and ) | |
| Engineering Services, LLC ("SES") ) | |

### Declaration of Ralph Pallotta

I, Ralph Pallotta, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and accurate to the best of my knowledge and belief:

1. I am the Chief Operating Officer of Science and Engineering Services, LLC ("SES"). I have held this position since April 2012. I have worked at SES for 7 years. Prior to becoming the COO, I served as Senior Vice-President of Operations at SES. In that role, I was responsible for overseeing the conduct of operations at SES, including the selection of subcontractors under SES's indefinite delivery, indefinite quantity ("IDIQ") contracts W52P1J-07-D-0039 and W58RGZ-09-D-0130 for support of the mission requirements of the PEO Aviation's Logistical Support Facility ("LSF") pursuant to Contract W52P1J-07-D-0039 with the US Army Sustainment Command and Contract W58RGZ-09-D-0130 with the US Army Contracting Command, Redstone Arsenal, Alabama ("the Contract" or "the LSF Contract"). The Army awarded SES the W52P1J-07-D-0039 Contract on 31 August 2007, after a competitive small business set-aside. The Contract was subsequently transitioned to the US Army Contracting Command, Redstone Arsenal, Alabama under Contract W58RGZ-09-D-0130 on 15 June 2009 for management and for the Contract's remaining period of performance.

2. On or about March 18, 2011, the Army requested that SES submit a proposal pursuant to the Contract to overhaul five Mi-17 aircraft in support of Pakistan to implement the Mi-17-1V/Mi-8MTV-1 cockpit modification design. Under the Statement of Work, SES was responsible for delivering technical and engineering services and providing contractor logistics support, to include procurement of parts, and maintenance, and program management, support of aircraft inventory, inspection, and validation, among other tasks. On or about 1 April 2011, the Army issued a modification to Delivery Order 0102 to SES for five Mi-17 aircraft overhauls.

3. SES has a Federal Acquisition Regulation ("FAR") approved purchasing system. SES's internal policy requires that it compete subcontractor work to the extent possible. To obtain competitive pricing for the base requirement for overhaul of Mi-17 helicopters,

November 14, 2012
Declaration of Ralph Pallotta

Page | 2

over and above overhaul services, and components, SES developed the selection criteria for subcontractors and solicited and received proposals from ███████ in April 2011; namely, Avia Baltika Aviation, Ltd. ("AB")/St. Petersburg Aircraft Repair Center (SPARC) ███████

4. SES competed the subcontractor effort and in selecting its subcontractor, applied the criteria it had developed. AB/SPARC ███████ winner of the subcontract competition. ██████████████████████████████████

5. Once SES performed its evaluations of subcontractors, SES presented its analysis and selection to the government for review to ensure that the government did not have concerns about SES's application of SES's procedures and process or SES's evaluation. Specifically, on April 12, 2011, SES reported the results of its analysis to the Army, but left the identities of the vendors anonymous. The Army did not object to SES's selection. SES later identified the contractors to the Government as AB/SPARC and ███████ and reported that the winner was AB/SPARC.

6. The competition for SES's subcontractor on Delivery Order 0102 was conducted by SES and was not conducted by the government.

*Ralph Pallotta*

Ralph Pallotta

November 14, 2012

*Attachment 6*

## COMBINED CONTRACTING OFFICER'S STATEMENT AND SUPPORTING LEGAL MEMORANDUM

GAO Protest No. B-405013.4

By Cornische Aviation and Maintenance, LTD

### Introduction

Cornische Aviation and Maintenance, LTD filed a post-award protest with the Government Accountability Office (GAO), by letter dated October 19, 2012, against the award by the U.S. Army Contracting Command-Redstone (ACC-RSA) of a delivery order /modification for the overhaul of Afghan Forces Mi-17 Aircraft, to Science and Engineering Services, Inc., (SESI) under the Logistics Support Facility (LSF) Contract No. W58RGZ-09-D-0130, an indefinite delivery, indefinite quantity (IDIQ) contract which is the contract by which the Logistical Support Facility Maintenance Activity (LSFMA) supports the mission requirements of PEO Aviation, including the Program Management Office (PMO) Non-Standard Rotary Wing Aircraft (NSRWA).  Contrary to the allegations of Cornische's letter of protest, a review of the facts, contractual instruments, and documents relevant to this procurement will show that the awards to SESI in question were not improper sole source contracts, but valid orders issued within the scope of the LSF IDIQ contract, which was competitively awarded to SESI in the first instance. The facts will also show that SESI, in its position as prime contractor under the LSF contract, and not the Army, selected Avia Baltica, LTD., (AVB) as a subcontractor for the Mi- 17 overhaul effort after SESI conducted a competition between two firms. Thus, this amounts to a protest of the award of a subcontract, which is outside of the jurisdiction of the GAO. Finally, the discussion will show that remaining allegations of the Protest are completely irrelevant to the award of the Mi-17 overhauls and otherwise amount to baseless accusations.

### Statement of Underlying Facts

The Logistics Support Facility (LSF) Indefinite Delivery Indefinite Quantity (IDIQ) contract was awarded to Science and Engineering Services, Inc. (SESI) of Huntsville, Alabama, on 31 August 2007 as a competitively awarded Small Business Set Aside Contract. (Tab E)  The LSF contract is an IDIQ contractual vehicle allowing for rapid response to meet customer needs. The primary focus of the LSF IDIQ contract is to provide Army Aviation and other DoD/Federal customers with a rapid acquisition, rapid response contract vehicle to provide warfighter capability in the most cost effective, rapid response environment. Through the LSF IDIQ contract, SESI provides a full spectrum of repair, modification, aircraft engine overhauls, and integration of aviation, ground vehicle and maritime systems and sub-systems to include logistics, technical, systems engineering, design and training support services. This IDIQ contract vehicle establishes an in-place, broad-scope contract for quick reaction contracting capability. The IDIQ provides for Firm Fixed Price, Cost Plus Fixed Fee, or Time and Material orders to suit the specific needs of the customer. See the LSF Scope of Work (SOW) Contract 0130, (Tab E.1).

The LSF contract was competed as a small business set aside under RFP W52P1J-07-R-0082 (Tab D ) and the contract was  awarded by  the Army Sustainment Command, Rock Island

by name. Finally, both J&A's for their respective ceiling increases were duly published in Fed Biz Opps. without protest. Thus any protest based upon them would now be untimely.

Since all efforts under Modifications 09 and 39 of DO 102 fall within scope of the overall Statement of Work of the LSF contract, and since protestor's arguments are not even supported by the J&A's which he cited for support, this ground of protest should be denied.

## B. Protestor is improperly Protesting the Award of a Subcontract awarded by the Contractor, SESI, and not the Government

Since the Mi-17 work lies squarely within the SOW for the underlying LSF contract, this protest is, in essence a protest of SESI's award of a subcontract to AVB. The discussion below will show that SESI conducted the selection of a subcontractor competitive selection and chose its subcontractor without government participation or direction. The Government's only role was to evaluate the proposal information provided by SESI to make sure that its requirements would be met on schedule and at a reasonable price as required by the underlying LSF contract.

On March 18, 2011, ACC-Redstone sought a proposal from SESI under a NSRWA requirement for the overhaul of 5 Mi-17's in support of Pakistan Security Forces. (Tab I.1) The record discussed below shows that SESI then conducted a competition to select a subcontractor. On March 28, 2011, SESI submitted its proposal for overhaul labor indicating it chose AVB as a subcontractor for the overhauls and on April 15, 2011 SESi formalized that decision. (Tab I.2 and Tab I.3).[4]

According to SESI's Subcontractor Justification document (Tab. I.3), the firm used the low, price, technically acceptable method to choose its subcontractor. Further, the evaluations contained in the Subcontractor Justification indicated that AVB was found technically acceptable whereas subcontract candidate, Honeywell, was found technically unacceptable under two evaluation factors (Certification and Schedule) and AVB's price of $11,388,500.00 was lower than Honeywell's price of $12,360,861.00.

It should note at this point that the Army had no involvement in the SESI's selection of its subcontractor under the Mi-17 effort, AVB, other than to consent to SESI's choice of subcontractor and the subcontract price. The above documents show that SESI, not the Army:

-determined the source selection method;

-determined which part of the effort it would perform and which it would subcontract out;

- prepared and disseminated its own solicitation for the subcontract for both the initial effort and effort as revised to include parts;

-received and evaluated the subcontractor proposals for both the initial overhaul effort and the revised effort to include parts without government participation;

---

[4] In order to get the overhaul effort on contract for PM NSRWA, on April11, 2011, Modification 04 was awarded to SESI for the overhaul labor portion only at a price of $13,821,297.00 while the firm was in the process of choosing its subcontractor.

9

# Exhibit 13

## Vergez Request Mi-17 Engine OEM to team with SESI

**Col Vergez invited the Mi-17 engine Manufacturer, Motor Sich to visit him in Huntsville Alabama.**

When Valery Tichkoff, the Motor Sich representative arrived for the meeting he was surprised to find that Col. Vergez was accompanied by representative from SESI and MD Helicopters.  Col Vergez introduced the two companies as his best partners and told Motor Sich he wanted them to team with SESI and MD.

# Exhibit 14

**Vergez Requests OEM Make Avia an Exclusive Distributor**

**Col. Vergez directed his staff to set up and attend a meeting inUkriane with Motor Sich, Avia Baltica and SESI to negotiate SESI/Avia Baltica being named as the sole source to the US and Afghansitan for the new Motor Sich Mi-17 engine.**

The US Army agreed that, in exchange for naming SESI/Avia Baltica the sole distributor for these engines, the US Army would:

- Immediately procure 2 engines (this occurred)
- Pressure the Russian to certify the new eninges in Russia
- Request the new engines be installed on future US procurements of Russain Mi-17s

Col. Vergez also provided a letter in support of the team to SESI for use in negotiations.



**DEPARTMENT OF THE ARMY**
PROGRAM EXECUTIVE OFFICE, AVIATION
NON-STANDARD ROTARY WING AIRCRAFT PROJECT OFFICE
215 WYNN DRIVE, SUITE 281
HUNTSVILLE, AL 35805-1944

REPLY TO
ATTENTION OF

August 22, 2012

Office of the Project Manager

Mr. Ralph Pallotta
Chief Operating Officer
Science and Engineering Services, Inc.
248 Dunlop Blvd
Huntsville, Alabama 35824

Dear Mr. Pallotta:

This letter is to inform you of the Army's intention to install SBM-1V engines on Mi-17 aircraft in support of operations in Afghanistan. The SBM-1V is a new generation of engine developed by JSC Motor Sich, Ukraine.

It is my understanding that your company has existing teaming arrangements with Avia Baltika Ltd. in the area of Mi-17 modifications. I also understand that Avia Baltika Ltd. is the licensed distributor for JSC MotorSich engines in the United States. Over the last 12 months your joint team worked with my Technical Division experts to provide engineering analysis and performance data regarding the SBM-1V. This kind of team work and engineering insight proved to be invaluable to the US Army and my team as we prepare to implement the first phase of procuring (2) SBM-1V engines for the US Army. The procurement of the (2) SBM-1V engines in your procession is pending final approval from the Deputy Commanding General-Air (DCOM-Air), NATO Training Command-Afghanistan (NTC-A). A formal contract action for the latter will soon follow from the Army Acquisition Center.

As my office prepares to implement the next phase, the USG will request that Rosoboronexport include SBM-1V engines as part of the procurement of 12 new Mi-17V5 aircraft from Kazan Helicopters. My understanding is that your team will continue to coordinate and work closely with the Motor Sich authorized distributor for the United States as the Army works with Russian Authorities on the certification of these engines on Mi-17V5 aircraft. This mutual effort has many moving parts involving multiple Government and Commercial Entities. I trust that your team (Avia Baltika Ltd, JSC Motor Sich) is up to the challenge to bring this much needed engine capability to our forces in Afghanistan.

Please feel free to contact me anytime at 256-313-2515, following contractual guidance to proceed.

Sincerely,

Norbert E. Vergez
Colonel, US Army
Project Manager, Non-Standard
    Rotary Wing Aircraft Project Office

# Mark Young

| | |
|---|---|
| **From:** | Mark Young [myoung@desmalter.com] |
| **Sent:** | Monday, February 11, 2013 1:20 PM |
| **To:** | 'Litwinowicz, Michael V CIV OSD POLICY' |
| **Subject:** | FW: More SES and Vergez |

I have attached a letter Vergez provided to SES last year.  It was provided to give SES additional leverage in getting Motor Sich to sign an exclusive with them and to get Motor Sich to agree to give SES a commission on sales of the new engine to Rosoboronexport.  The problem SES has had with Sich is that their partners, Avia Baltica and SPARK, do not use Motor Sich to overhaul engines.  Instead, they use non-certified companies.

Also, Avia Baltica is NOT the (or even "a") licensed distributor for Motor Sich in the US.  You can go to the Motor Sich Website and see that AB is not even a partner company.
http://www.motorsich.com/eng/profile/partners/

Again, this letter was provided to help SES get teammates for WLSS and other opportunities.  And to think some companies have to hire marketing people.  I hope they are paying Vergez what he is worth.

## Mark Young

**From:**    Mark Young [myoung@desmalter.com]
**Sent:**    Monday, January 06, 2014 7:36 AM
**To:**    'Lardner, Richard'
**Subject:** RE: Attached Image

At that time, the Army was looking at ordering 45 more aircraft.  With a profit of $300k per engine, two engines per AC, you have $27M.  I heard SESI was making $200k per engine for a total of $18M.  Then you add in the Army requirement to overhaul up to 15 legacy aircraft per year (30 engines required) and you have a nice annual income with no work required.

V/r

Mark Young
**Defense Technology Inc.**
www.DefTechInc.com
256-603-7978

**"Bonitas non est pessimis esse meliorem." Seneca**

**From:** Lardner, Richard [mailto:RLardner@ap.org]
**Sent:** Monday, January 06, 2014 6:17 AM
**To:** Mark Young
**Subject:** RE: Attached Image

Hi Mark – Vergez's August 2012 memo pitching the Motor Sich engines with AVB as the licensed distributor would unquestionably benefit AVB, correct?
Is there any way to quantify the dollar amount of the benefit, even a ballpark estimate?
Thanks,
- Richard

**From:** Mark Young [mailto:myoung@desmalter.com]
**Sent:** Tuesday, December 17, 2013 9:26 AM
**To:** Lardner, Richard
**Subject:** Re: Attached Image

Met with motor Sich last month to discuss this issue.

They confirmed they gave Avia an exclusive through December 2014.  I mentioned that Avia was not even a facility recognized as a partner facility on the motor Sich web page.  They laughed and said it was odd, they had never granted such an exclusive before.

They said they had meeting with Avia and US army, and that Avia had army support.  They signed contract with Avia that in turn for exclusive on US and Afghan sales, Avia would 1) buy two engines for US army, 2) US army would pressure Mil Moscow to certify the new engines, and the US army would make they new engines a requirement on future new helo orders.
Motor Sich now considers Avia in breech as they have not accomplished (2) and failed on (3).

Vergez wrote his puff letter to SESI in support of getting this contract signed.

On Dec 17, 2013, at 3:07 PM, "Lardner, Richard" <RLardner@ap.org> wrote:

# Exhibit 15

## Vergez False States SESI Overhauls Competitive

*Attachment #2*



**DEPARTMENT OF THE ARMY**
PROGRAM EXECUTIVE OFFICE, AVIATION
NON-STANDARD ROTARY WING AIRCRAFT PROJECT OFFICE
215 WYNN DRIVE, SUITE 201
HUNTSVILLE, AL 35805-1944

REPLY TO
ATTENTION OF

June 6, 2011

Office of the Project Manager

Mr. Mikhail Dmitriev
Director General
Federal Service for Military-Technical Cooperation
18/1, Ovchinnikovskaya Emb.
Moscow, 115324, Russian Federation

Dear Mr. Dmitriev:

Please accept my sincere salutations and deepest respect for you and the great team at the Russian Federal Service for Military and Technical Cooperation (FSMTC).

The purpose of my letter is to present you with the US Government's practice regarding "Full and Open Competition" for service type contracts that include aircraft overhauls.

In accordance with US Federal Acquisition Regulations (FARs), Defense Acquisition Regulations (DFARs) and US Department of Defense (DoD) acquisition policies, and procedures, all DoD agencies are required to perform acquisition activities within the scope of a full and open competitive environment. Although the FARs, DFARs and DoD policies allow for exceptions, the standard practice is full and open competitions. Such is the case with the five Mi-17 aircraft overhauls for the country of Pakistan that you cite in your May 27, 2011 letter to Mr. Keith Webster (see enclosure).

Officials from the US Government are keenly aware and respect Russian Federation law which stipulates that the procurement and support activities inside the territories of the Russian Federation involving Military End-Use items must be worked through the Federal Unitary Enterprise, Rosoboronexport.

The Pakistan Mi-17 aircraft identified in the enclosure are under contract by the US Government with Science and Engineering Services (SES) company. The US Government awarded the latter contract to SES following a full and open competition. The statement of work (SOW) provided to SES includes the requirement that SES and their competed sub-contractor work with Rosoboronexport in accordance with Russian Federation law.

In an effort to build on the Project Management Office (PMO), Non-Standard Rotary Wing Aircraft (NSRWA) relationship with their new Original Equipment Manufacturer (OEM), Rosoboronexport, I, as the Project Manager, NSRWA will exercise a task order through the Engineering Services portion of the contract to purchase 21 Mi-17V5 Military Transport Aircraft for Afghanistan. The intent of the task order is for Rosoboronexport to provide the

-2-

US Government prime, SES, with technical engineering assistance for the five Pakistan Mi-17s awaiting overhaul.

I believe that this approach supports the US Government's requirement for full and open competition as well accommodating Russian Federation law.

You have my commitment that the US Government will continue to honor our agreement with the latter, consistent with our past meetings and signed protocols.

Sincerely,

Norbert E. Vergez
Colonel, US Army
Project Manager, Non-Standard
  Rotary Wing Aircraft Project Office

Enclosure